CONTINENTAL INSURANCE COMPANIES, Respondent, v TRANS-PORT INSURANCE COMPANY OF TRANSPORT GROUP et al., Appellants.

Fourth Department, May 21, 1976

*Lines, Wilkens, Osborn & Beck (James Reed, Jr.,* of counsel), for appellants.

*Wickes, Snider, Weidman & Jordan (George Mackey* of counsel), for respondent.

GOLDMAN, J. Defendants Transport Insurance Company (Transport) and Hall's Motor Transit Company (Hall's) appeal from a denial of their motion for summary judgment in a declaratory judgment action commenced by plaintiff Continental Insurance Companies (Continental).

One Howard Smith, a truck driver employed by Hall's, was injured on June 12, 1970 on the premises of the Eaton Corporation while Eaton employees were loading Eaton's goods onto a Hall's truck which Smith was to drive to some destination. Smith commenced an action against Eaton in Federal court for personal injuries, alleging in his complaint that he was injured while occupying the truck and because of Eaton's employees' negligence in operating a loading crane.

Continental, Eaton's insurer, then brought the instant action for a declaratory judgment, claiming that a liability insurance policy issued by Transport to Hall's provides coverage for the defense and indemnification of Eaton in the Smith negligence action. Continental contends that Eaton is an additional insured under the policy by virtue of 11 NYCRR 60.1, which provides in part that:

"An 'owner's policy of liability insurance' shall contain in substance the following minimum provisions or provisions which are equally or more favorable to the insured and judgment creditors * * *

"(c) A provision insuring as 'insured' (1) the named insured and [his spouse in certain circumstances]; (2) any other person

using the motor vehicle with the permission of the named insured or such spouse provided his * * * actual use thereof is within the scope of such permission".

Continental further notes condition (5) of Transport's policy which provides, in pertinent part, as follows:

"(5) Financial Responsibility Laws and Regulatory Authority Requirements

"Such insurance as is afforded by this policy shall comply with the provisions of the motor vehicle financial responsiblity law, or similar law, and motor carrier regulatory authority requirements of any state or province which shall be applicable with respect to any such liability arising out of the existence, ownership, maintenance or use of any automobile during the policy period, but only to the extent of coverage and limits of liability required by such law."

Hence Continental contends that Transport's policy covers Eaton if at the time of Smith's injury Eaton was "using" Hall's truck with Hall's permission.

In *Wagman v American Fid. & Cas. Co.* (304 NY 490, 494), where an automobile liability policy expressly provided that "use" of the vehicle includes "loading and unloading", the court chose to interpret the phrase broadly, to mean "not only the immediate transference of the goods to or from the vehicle, but the 'complete operation' of transporting the goods between the vehicle and the place from or to which they are being delivered". In *Wagman,* a store employee was supervising the loading of goods onto a truck not owned by the store. In walking from the curb to the store to check on goods to be shipped he negligently knocked down a passerby who sued him and the store. The court concluded that the accident occurred within the scope of the "complete operation" of loading the truck, so that the store employee was "using" the truck and came within the coverage of the truck owner's policy.

In *Cosmopolitan Mut. Ins. Co. v Baltimore & Ohio R.R. Co.* (18 AD2d 460, 462, revg 37 Misc 2d 219), an automobile liability policy which made no explicit reference to "loading and unloading" was nevertheless deemed to afford "loading and unloading" coverage. The court stated (p 462): "The general provisions thereof for insurance against liability for accidents arising 'out of the ownership, maintenance or use' of the truck are to be construed to afford coverage for liability for accidents occurring by reason of the use of such vehicle

during the loading and unloading of goods therefrom. (See *D'Aquilla Bros. Contr. Co. v. Hartford Acc. & Ind. Co.,* 22 Misc 2d 733, 735, mod. 15 AD2d 509; *Roche v. United States Fid. & Guar. Co.,* 247 App. Div. 335, affd. 273 N.Y. 473. Cf. *Aranzullo v. Collins Packing Co.,* 18 AD2d 1068.) Moreover, the further provisions in the policy that 'the unqualified word "Insured" includes the named Insured * * * and also includes any person while using the automobile' with permission of the insured have the effect of broadening the coverage to include as an additional insured any person 'using' the vehicle during loading and unloading. (See *Wagman v. American Fid. & Cas. Co.,* 304 N.Y. 490, 494; *Brustein v. New Amsterdam Cas. Co.,* 255 N.Y. 137; *D'Aquilla Bros. Constr. Co. v Hartford Acc. & Ind. Co., supra; Greaves v. Public Serv. Mut. Ins. Co.,* 4 A D 2d 609, affd. 5 N Y 2d 120; *Standard Sur. & Cas. Co. of N.Y. v. Maryland Cas. Co.,* 199 Misc. 658, affd. 281 App. Div. 446.)"

In 1965, two years after the *Cosmopolitan* decision, the Superintendent of Insurance amended the regulation prescribing "mandatory provisions" for automobile liability insurance policies to provide that the definition of "insured" need only encompass the named insured and his spouse with respect to "loading and unloading" accidents.[1] The amended regulation provides:

"As respects any person or organization other than the named insured or such spouse the policy *need not apply:* * * *

"(iii) to any person or organization, or to any agent or employee thereof, with respect to bodily injury, sickness, disease or death, or injury to or destruction of property arising out of the loading or unloading of the motor vehicle." (11 NYCRR 60.1 [c] [3]; emphasis supplied.)

Since the amendment the Court of Appeals has twice up-

---

1. The amendment was most likely attributable to the insurance industry's desire to bring uniformity and clarity into decisions interpreting "loading and unloading" provisions. In some jurisdictions the phrase was interpreted narrowly to encompass only the removal of goods from the truck and their carriage to the place where they are first set down, while other jurisdictions, such as New York, adopted the broader "complete operation" test *(Wagman, supra).* Even in the latter jurisdictions, nice distinctions were based on the degree of causal connection between the accident and the "loading or unloading" process (cf. *Wagman, supra,* with *Cosmopolitan, supra).* As a result, the industry in 1963 promulgated an endorsement designed to limit the scope of "loading and unloading" coverage to a narrow class including named insureds, their spouses, bailees, borrowers and the like. For the language of the endorsement, see 1 Long, Law of Liability Insurance, § 6.15, pp 6-63 to 6-65. The history of the "loading and unloading" provision is well summarized in chapter 6 of Long's treatise.

held the validity of the regulation and of policy endorsements limiting "loading and unloading" coverage *(Ferber v Waco Trucking,* 36 NY2d 693 [in suit by party injured by a carton during unloading of truck, independent contractor hired by trucker to unload truck was not covered under trucker's policy]; *Breen v Cunard Lines S.S. Co.,* 33 NY2d 508 [in suit by truck driver against consignee for injuries sustained while unloading on consignee's pier, consignee was not covered by trucker's policy]; see, also, *Wachstein v General Acc. Fire & Life Assur. Corp.,* 36 AD2d 963). In *Breen,* the liability policy at issue expressly limited bodily injury coverage in "loading and unloading" accidents to the named insured, his employees, and lessees or borrowers. In holding the Superintendent's regulation valid, the court observed (pp 510, 511):

"Although [Vehicle and Traffic Law, § 345, subd [b], par [2] and Insurance Law, § 167, subd [2] mandate liability coverage for any party either 'using' the vehicle with the permission of the named insured, or 'responsible for' the vehicle, these provisions do not preclude a regulation making more definite the extended coverage required for the acts of loading and unloading of a motor vehicle. * * *

"Although the cited provisions of the Vehicle and Traffic Law and the Insurance Law were enacted after the *Wagman* decision *[Wagman v American Fid. & Cas. Co.,* 304 NY 490, *supra],* it would be incorrect to infer that the Legislature intended to mandate the same comprehensive loading and unloading coverage which this court found in the express terms of the insurance policy in that case. Unlike that insurance policy, the statutory reference to 'users' is general and does not necessarily include every attenuated event that one might associate with a broad description of a loading or unloading operation or those who participate in the operation, however remotely."

The Superintendent's regulation was deemed "rational" and therefore valid, in light of "the generality of the applicable statutes, the indefiniteness inherent to the loading and unloading process, and the practicalities of the overlapping of liability insurance" (33 NY2d, at pp 511-512). Since the regulation was valid, so was the policy endorsement authorized thereby.

*Ferber, Breen* and *Wachstein (supra)* all involved policies that contained express limitations on "loading and unloading"

coverage. The present policy, in contrast, fails to mention "loading and unloading" coverage at all. Special Term took the view that such coverage is nevertheless included because "the term 'need not apply' [in 11 NYCRR 60.1 (c) (3)] cannot be equated with an automatic limitation of additional interests * * * [but is merely] a permitted limitation", which cannot be accomplished without an explicit policy provision.

We disagree. Although the policy provides, in condition (5), that the insurance thereby provided "shall comply" with the requirements of New York State law, such compliance is guaranteed "only to the extent of coverage and limits of liability required by such law". In light of the Superintendent's regulation authorizing limitation of "loading and unloading" coverage, and the cases upholding its validity, we do not see how "loading and unloading" coverage for consignors can be said to be "required" by New York law. Thus, we conclude that condition (5) has the effect of limiting "loading and unloading" coverage to the named insured and, where appropriate, his spouse, as permitted by the regulation.

*Cosmopolitan Mut. Ins. Co. v Baltimore & Ohio R.R. Co.* (18 AD2d 460, *supra)* does not require a different result. As has been stated, that case was decided two years before the regulation was amended to permit limitation of "loading and unloading" coverage. Moreover, we have found no case decided since *Cosmopolitan* that has construed an auto liability policy to provide "loading and unloading" to a consignor, consignee or premises owner in the absence of a policy provision expressly pertaining to "loading and unloading".[2] Nor do we believe that the intent of the parties to the insurance contract would be defeated by a holding that a consignor, who paid no

---

2. Even among pre-amendment cases, we have found only one such case besides *Cosmopolitan*—namely, *D'Aquilla Bros. Contr. Co. v Hartford Acc. & Ind. Co.* (22 Misc 2d 733, mod on other grounds 15 AD2d 509). There, Trial Term stated: "The instant policy does not define the word 'use'. Therefore, while it does not specifically include loading and unloading as an authorized use, neither does it specifically exclude loading and unloading as an authorized use. This court finds that such activities are a proper use of the vehicle and that [the party who negligently loaded the truck is therefore covered under the truck owner's liability policy]" (22 Misc 2d 733, 735). No authority was cited. The Second Department modified on other grounds with no discussion on this point. In *Cosmopolitan,* Special and Trial Term cited only *D'Aquilla* in concluding that the policy, which did not define "use", covered loading and unloading activities (37 Misc 2d 219, 220-221, revd on other grounds 18 AD2d 460). Thus it would appear that the proposition that "use" includes "loading and unloading" was never so well settled as the present parties believe, at least where the policy is silent as to the status of "loading and unloading" coverage.

premium for the policy and is a stranger to the contract, is not entitled to coverage under it.

Finally, although it is settled that ambiguities in an insurance policy must be construed against the insurer, especially when the ambiguities appear in an exclusionary clause *(Thomas J. Lipton, Inc. v Liberty Mut. Ins. Co.,* 34 NY2d 356, 361), we see no basis for invoking that principle here. Policy condition (5) is clear to the effect that the policy is not to be read as providing coverage beyond the extent required by law, and it seems equally clear that New York does not require "loading and unloading" coverage to extend beyond the named insured. Accordingly, we conclude that appellants are entitled to summary judgment as a matter of law, since the facts alleged in the complaint, even if proved, would not entitle Eaton to be defended or indemnified by Transport. The order should be reversed, appellants' motion for summary judgment should be granted and the complaint dismissed.

MARSH, P. J., CARDAMONE, SIMONS and MAHONEY, JJ., concur.

Order unanimously reversed, with costs, motion for summary judgment granted and complaint dismissed.

