UTICA MUTUAL INSURANCE COMPANY, Appellant, v PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY et al., Respondents.

Second Department, July 16, 1984

APPEARANCES OF COUNSEL

*Rider, Drake, Sommers & Loeb, P. C. (Bernard J. Sommers* and *H. W. Bernstein* of counsel), for appellant.

*Schleider, Dupee & Madison (James R. McCarl* of counsel), for Prudential Property and Casualty Insurance Company, respondent.

### OPINION OF THE COURT

LAZER, J.

Following her purchase of wood panelling from the Conklin & Strong, Inc., store in Warwick, New York, store employees loaded the panelling into Doris Call's station wagon. During the course of Mrs. Call's drive home, the panelling shifted, fell upon her and caused serious injuries that became the basis for a negligence action she and her husband brought against Conklin & Strong. Utica Mutual

Insurance Company, Conklin & Strong's liability carrier, then commenced this action for a declaration that the Calls' automobile liability carrier, Prudential Property and Casualty Insurance Company, was obligated to defend Conklin & Strong and pay any judgment the Calls might obtain within Prudential's policy limits. According to Utica Mutual, Conklin & Strong was covered under Prudential's policy because it defined "insured" as "any person using such automobile with the permission of the named insured" and defined "use" to include "loading and unloading". Moving for summary judgment dismissing the Utica Mutual complaint as against it, Prudential argued that Mrs. Call's injury was not caused by "loading and unloading" because that process had been completed by the time the injury occurred. Utica cross-moved for summary judgment.

Although Special Term found that the loading had caused the injury, it held that the Prudential policy limited loading and unloading coverage to the Calls as the named insureds, and the complaint was dismissed. Special Term based its reasoning on two primary sources — a regulation of the State Insurance Department and a paragraph of the Prudential policy. The regulation provided that: "[T]he policy need not apply * * * to any person * * * [other than named insured or spouse] with respect to * * * injury * * * arising out of the loading or unloading of the motor vehicle" (11 NYCRR 60.1 [c] [3] [iii]). The paragraph of the Prudential policy was entitled "Financial Responsibility Laws" and read: "When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for bodily injury liability or for property damage liability *shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law,* but in no event in excess of the limits of liability stated in this policy" (emphasis supplied).

Since the Insurance Department regulation declared that loading and unloading coverage "need not apply" to others than the named insured and Prudential's financial responsibility clause afforded coverage to the "extent * * *

required by * * * law", Special Term concluded that only the named insureds were entitled to loading and unloading coverage. In reasoning as it did, the court relied on certain dicta in the Fourth Department decision in *Continental Ins. Cos. v Transport Ins. Co. of Transp. Group* (52 AD2d 210). We believe that reversal is required.

At the outset of our analysis, we reject Prudential's contention that the accident was not a product of the loading process because it had been completed before Mrs. Call commenced her drive home. Loading and unloading coverage includes injuries resulting from the negligence of insured persons in the loading or unloading process (*Cosmopolitan Mut. Ins. Co. v Baltimore & Ohio R. R. Co.,* 18 AD2d 460; 6B Appleman, Insurance Law and Practice, § 4322) and it is irrelevant that the harm is sustained at a different place and time than the loading or unloading (see, e.g., *Crowley's Milk Co. v American Mut. Liab. Ins. Co.,* 426 F2d 752; *Panhandle Gravel Co. v Wilson,* 248 SW2d 779 [Tex]; see 12 Couch, Insurance 2d, §§ 45:137-45:138). The issue in this case is the extent of policy coverage.

In its brief, Utica distinguishes the *Continental* case because the Continental policy contained no mention of loading and unloading coverage, while Prudential's policy insured persons who had permission to use the named insured's automobile and defined use to include loading and unloading of the vehicle. While the basic issue in *Continental* was whether "use" as defined in the policy encompassed "loading and unloading", in the course of deciding that it did not, the Fourth Department made a number of references to the financial responsibility clause in the policy and the same Insurance Department regulation that we consider now (*Continental Ins. Cos. v Transport Ins. Co. of Transp. Group, supra*). Although the instant policy expressly provides coverage for "loading and unloading" — as Continental's did not — Prudential argues that the effect of the financial responsibility provision is to limit that coverage to the named insureds.

In rejecting that argument, we first note that the Motor Vehicle Financial Security Act (Vehicle and Traffic Law, art 6) specifically declares that nothing contained in the regulations of the Superintendent of Insurance prescribing

minimum provisions of motor vehicle liability insurance coverage or in the act itself "shall prohibit any insurer from affording coverage under [the] owner's policy of liability insurance more liberal than that required by said minimum provisions" (Vehicle and Traffic Law, § 311, subd 4, par [a]). We view the financial responsibility provision in the Prudential policy as intended solely to protect against the possibility that coverage in the policy might inadvertently fall below the minimum legal requirements of the Financial Responsibility Law. The crucial language of this conformity clause declares that the policy "shall comply with the provisions of [the Financial Responsibility] law to the extent of the coverage and limits of liability required by such law". Since we cannot agree that this language restricts or deletes coverage expressly provided in other portions of the policy, we find ourselves in accord with Professor Appleman's comment on the *Continental* case — that "[t]he conformity clause merely extended coverage to comply with that required, and provided logically that any such extension under the conformity clause went no further than required by law. The clause had no application in this case since the [loading and unloading] regulation neither mandated nor forbad coverage." (See 6B Appleman, Insurance Law and Practice [1983 Pocket Part], § 4322, p 37.) Furthermore, it is the insurer which has the burden of proof to establish that a claim is encompassed by an exclusion in a policy (*Neuwirth v Blue Cross & Blue Shield of Greater N.Y.*, 62 NY2d 718) and any limitation in coverage must be described in clear and explicit language (*Roach v Churchman*, 431 F2d 849; *Kronfeld v Fidelity & Cas. Co.*, 53 AD2d 190). The restriction on "loading and unloading" coverage that Prudential now invokes cannot exist in the absence of clear and explicit language limiting coverage to the named insured. We find no such language in the policy.

Prudential's final contention is that as a stranger to the contract between the Calls and Prudential, Conklin & Strong should not be the beneficiary of insurance protection paid for by the Calls. This position has jurisprudential support solely in Ohio where "use" is deemed to include "loading and unloading" for the purpose of defining coverage but not for the purpose of defining "insured" (see

*Buckeye Union Cas. Co. v Illinois Nat. Ins. Co.,* 2 Ohio St 2d 59; *Travelers Ins. Co. v Buckeye Union Cas. Co.,* 172 Ohio St 507). Ohio's approach has been rejected elsewhere on the grounds that "use" cannot mean one thing for coverage and something else for defining an insured, that the insurance policy makes no distinction for strangers to the named insured when it defines "loading and unloading", and that the Ohio rule reads conditions into the definition of the insured not contained in the policy (see, e.g., *St. Paul Mercury Ins. Co. v Huitt,* 336 F2d 37 [6th Cir]; *Argonaut Ins. Co. v Colonial Ins. Co.,* 70 Cal App 3d 608; *Dairyland Ins. Co. v Concrete Prods. Co.,* 203 NW2d 558 [Iowa]; *Fidelity & Cas. Co. v North Carolina Farm Bur. Mut. Ins. Co.,* 16 NC App 194; see 6B Appleman, Insurance Law and Practice, § 4322).

Our conclusion, then, is that Conklin & Strong is an insured under the Prudential policy because the Call vehicle was being used by Conklin & Strong when its employees loaded it (see *Argonaut Ins. Co. v Transport Ind. Co.,* 6 Cal 3d 496). While this result hardly accords with traditional notions of who should bear responsibility for negligent conduct, we ought not to make bad law in order to force a different conclusion.

Accordingly, the judgment appealed from should be reversed with a declaration that Prudential, under its policy issued to the Calls, is obligated to defend Conklin & Strong and pay any judgment the Calls might obtain within the policy limits.

TITONE, J. P., MANGANO and BOYERS, JJ., concur.

Judgment of the Supreme Court, Orange County, entered July 18, 1983, reversed, on the law, with costs payable by defendant Prudential Property and Casualty Insurance Company, said defendant's motion for summary judgment is denied, plaintiff's cross motion for summary judgment is granted, and it is declared that Prudential, under its policy issued to John and Doris Call, is obligated to defend Conklin & Strong and pay any judgment the Calls might obtain within the policy limits.