**NIPKOW & KOBELT, INC.,
PARLIAMENT TEXTILE
DIVISION, Plaintiff,**

v.

**The NORTH RIVER INSURANCE
CO., Defendant.**

**No. 85 Civ. 535 (CHT).**

United States District Court,
S.D. New York.

April 13, 1986.

Botein Hays & Sklar, New York City, for plaintiff; Laurence M. Kaye, of counsel.

Greenhill & Rubin, New York City, for defendant; Charles T. Rubin, of counsel.

OPINION

TENNEY, District Judge.

This action concerns the interpretation of an insurance contract. The plaintiff, Nipkow & Kobelt, Inc., Parliament Textile Division ("Parliament"), instituted this diversity action to recover on a fire insurance policy ("policy") issued by the defendant, The North River Insurance Co. ("North River"). In 1984, almost $600,000 of the plaintiff's inventory was destroyed by a fire.

The defendant now moves for summary judgment, arguing that the fire occurred at a location which was not covered by plaintiff's policy. The plaintiff contends that the policy covered its entire inventory, regardless of where it was located. The plaintiff cross-moves for summary judgment on the issue of the policy's coverage. The Court concludes that the inventory at issue here was covered by the plaintiff's policy.

BACKGROUND

The facts are undisputed in this matter. Parliament deals in textile fabrics, and its goods are processed at various plants. Parliament purchases unfinished fabric from various mills, has the fabric dyed or finished, and then sells the fabric to clothing manufacturers. Parliament does not own or operate any plants; its fabrics are sent to various factories to be processed.

In March, 1984, there was a fire at Jamel Textiles, Inc. ("Jamel"), which is a printing and finishing plant located in Lebanon, Pennsylvania. Approximately one-half of the plaintiff's total inventory was on Jamel's premises at the time of the fire, and, in June 1984, the plaintiff submitted its proof of loss under the policy for $594,848.10.

North River denied insurance coverage on the ground that the loss occurred at a location that was not specifically listed in the policy and therefore the loss was not covered by the plaintiff's policy. Parliament argues that the policy was intended

to cover its entire inventory, regardless of where it was located. The parties have cross-moved for summary judgment on the issue of coverage.

### DISCUSSION

Summary judgment may be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. ("Rule") 56(c); *see generally* 6 J. Moore, W. Taggart and J. Wicker, *Moore's Federal Practice* ¶ 56.15 [1.–0] (2d ed. 1983). The party moving for summary judgment has the burden of showing that there are no material facts in dispute, and the court will resolve all ambiguities in favor of the party opposing the motion. *See Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975).

If, however, the motion for summary judgment is supported by affidavits or other sworn testimony as provided by Rule 56(e), so that the moving party makes a *prima facie* showing that there is no genuine issue of material fact, then the nonmoving party must adduce "specific facts showing that there is a genuine issue for trial." *Id.; see Barnett v. Howaldt*, 757 F.2d 23, 26 (2d Cir.1985). Summary judgment will not be denied on the basis of mere conclusory allegations, made without factual support. *See Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983).

The question in this case concerns the appropriate construction of the plaintiff's insurance policy and whether coverage is afforded under facts that are not in dispute. In this instance, the contract is clear in and of itself, so that it is not necessary to consider extrinsic evidence in order to determine the intention of the parties. The parties' intentions can be gathered from within the four corners of the instrument. The question presented, therefore, is purely one of law, to be decided by the court. *See Loblaw, Inc. v. Employer's Liability Assur. Corp.*, 57 N.Y.2d 872, 876, 456 N.Y.

S.2d 40, 43, 442 N.E.2d 438, 441 (1982); *Stainless, Inc. v. Employers' Fire Insurance Co.*, 69 A.D.2d 27, 32, 418 N.Y.S.2d 76, 79 (1st Dep't 1979), *aff'd*, 49 N.Y.2d 924, 428 N.Y.S.2d 675, 406 N.E.2d 490 (1980); *see also National State Bank v. American Home Assurance Co.*, 492 F.Supp. 393, 396–97 (S.D.N.Y.1980) (The court granted summary judgment, finding that the policy at issue was unambiguous when read as a whole.). After careful consideration of the record, the Court concludes that the plaintiff's motion for partial summary judgment must be granted.

*The Insurance Policy*

The plaintiff bases its argument on the first paragraph of the policy which provides as follows:

1. Interest and Property Insured:
   ... [T]his policy insures:
   (a) The Interest of the Assured in all personal property owned by the Assured[.]

The plaintiff contends, and the Court agrees, that this paragraph defines the policy's coverage, and that it includes *all* of the plaintiff's personal property, which in this instance is the plaintiff's inventory.

The defendant argues, however, that there is no coverage in this instance because of Section 6 which sets forth certain limitations on liability. That section provides:

6. Limits of Liability: The Company shall not be liable under this policy for more than the following limits for loss or damage arising from any one loss or disaster:
   (a) AS PER SCHEDULE on property at any one location.[1]

In the Schedule, the parties listed three locations, and specified the limits of liability for those locations. The designated Schedule provides:

SPECIAL LIMITS OF LIABILITY....
[T]he limit of liability specified in Paragraph (a) of Section 6 of this policy on

---

1. In the contract, Subsection (a) had a dollar sign and a blank. The parties inserted the phrase "AS PER SCHEDULE" in the blank.

property at any one location, ... is amended for the locations listed below and changed to the limit of liability set opposite each such location.

| LOCATION | LIMIT OF LIABILITY |
|---|---|
| FLEISCHER FINISHING | |
| 313 MILL ST., WATERBURY, CT. | $25,000 |
| 42 W. 39TH ST., NEW YORK, N.Y. | $25,000 |
| 468 PARK AVE., NEW YORK, N.Y. | $10,000 |

All other terms and conditions of this policy remain unchanged.

The defendant argues that the policy covers the plaintiff's property only at the three locations listed in the Schedule, and that the policy provides no coverage to goods located at any location that is not specifically identified.

*Plain Language of the Contract*

The defendant's interpretation is not consistent with the plain language of the policy. The policy describes the "Property Insured" as being "all personal property owned by [Parliament]." Under the Schedule, the insurer's liability for damage to the plaintiff's personal property was "amended for the locations listed." That can only mean that the insurer's liability for property at all other locations continued without amendment or change. This conclusion is supported by the language of the Schedule itself which provides that "[a]ll other terms and conditions of [the] policy remain unchanged." Thus, Section 6 merely establishes a monetary limit on the amount of insurance Parliament can collect for prop-

erty which is damaged at the specified locations; it does not revoke coverage for all other personal property owned by Parliament.

██ Furthermore, restrictions on the extent of coverage cannot be implied; any exclusion or limitation in policy coverage must be specific in order to be enforced. *See Utica Mutual Ins. Co. v. Prudential Property and Cas. Ins. Co.*, 103 A.D.2d 60, 63, 477 N.Y.S.2d 657, 660 (2d Dept.1984), *aff'd*, 64 N.Y.2d 1049, 489 N.Y.S.2d 704, 478 N.E.2d 1305 (1985); *Roach v. Churchman*, 431 F.2d 849, 851 (8th Cir.1970). Whenever an insurer wishes to limit its obligations by excluding certain coverage, it must do so in clear and unmistakable language. *See Vargas v. Insurance Co. of North America*, 651 F.2d 838, 839 (2d Cir. 1981).

There is no such language in the instant policy.[2] The insurer drafted the policy and could have specifically excluded all of the plaintiff's property that was not located at the premises listed. The insurer failed to set forth in plain and unmistakable language the type of broad exclusion of coverage that it is now asserting, and the Court will not imply such an exclusion. *See Seaboard Surety Co. v. Gillette Co.*, 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 880, 476 N.E.2d 272, 279 (1984) (Exclusions "are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction.").[3]

---

**2.** The insurer bears the burden of proving that a claim is encompassed by an exclusion in a policy. *See Utica v. Prudential*, 103 A.D.2d at 63, 477 N.Y.S.2d at 660. Moreover, "the attempt to use words of limitation in the nature of an exception to the primary coverage is also strictly construed against the insurer." *DeForte v. Allstate Ins. Co.*, 81 A.D.2d at 469, 442 N.Y.S.2d at 310 (4th Dep't 1981).

**3.** The policy at issue here was effective from 1982 to 1984. The plaintiff had previously been insured by the defendant from 1979 to 1982 under a similar policy ("1979 policy"). Section 6, "Limits of Liability," was the same in both policies, except that in the 1979 policy six locations were listed on the attached Schedule. The 1982 policy lists only three locations.

It is undisputed that the parties agreed that coverage should be eliminated for one of the six

locations originally listed, which was not listed in the 1982 policy. According to the defendant, this shows that the parties intended to cover *only* those locations listed in the Schedule, and all other locations were excluded. New York law, however, mandates that any exclusion be specific, *see Utica Mutual v. Prudential*, 103 A.D.2d at 63, 477 N.Y.S.2d at 660. Merely eliminating the premises from the Schedule does not constitute a clear and specific exclusion.

Furthermore, the plaintiff points out that one of the locations that was deleted from the Schedule was a processing plant which the plaintiff considered one of its principal plants. *See* Reply Affidavit of Henry A.J. Sip at 3–4. It seems unlikely that the parties would completely exclude one of the plaintiff's principal processing plants from coverage without being more specific. It is more reasonable to con-

■ The type of policy that the defendant issued to the plaintiff also supports the conclusion that the parties intended to insure Parliament's entire inventory. The policy is a "Manufacturer's Output Policy." Although the defendant consistently identifies the policy as a "specified location policy," there is no basis for considering it as such. Generally, where coverage is provided under a Manufacturer's Output Policy, all personal property—i.e., all inventory— owned by the insured is covered. *See Imperial Enterprises, Inc. v. Fireman's Fund Ins.*, 535 F.2d 287, 289 (5th Cir.1976); *General Cigar Co. v. Lancaster Leaf Tobacco Co.*, 323 F.Supp. 931, 934 (D.Md. 1973); B.J. Werbel, *Werbel's General Insurance Guide*, p. 5071 (1985).

The interpretation being advocated by the defendant—that the extent of coverage is defined in Section 6—requires a strained reading of the policy. Section 6 deals with "Limits of Liability"; it is not entitled "Coverage," and it does not require the parties to specifically list or identify what property will be covered. In fact, there is no provision in the policy that calls for such a list. If the policy had been issued without the attached Schedule, then there is no doubt that all of the plaintiff's property would have been covered, even though *no* locations had been specified.

*The Parties' Intentions*

An insurance policy should be interpreted in a way that effectuates the parties' intent as expressed by their words and purposes. *See American Home Prod. Corp. v. Liberty Mut. Ins. Co.*, 565 F.Supp.

1485, 1492 (S.D.N.Y.1983), *aff'd as modified*, 748 F.2d 760 (2d Cir.1984). "[A]ccount should be taken of the reasonable expectation and purpose of the businessman who purchased the contract." *DeForte v. Allstate Ins. Co.*, 81 A.D.2d 465, 467, 442 N.Y.S.2d 307, 309 (4th Dep't 1981). *See Sutton v. East River Savings Bank*, 55 N.Y.2d 550, 555, 450 N.Y.S.2d 460, 462, 435 N.E.2d 1075, 1077 (1982).

The plaintiff's inventory is ordinarily located at a variety of plants, none of which Parliament owned. During the period of time that the policy was in effect, Parliament's goods were processed by at least 19 different printers and finishers. *See* Affidavit of Henry A.J. Sip ("Sip Aff.") at 5. In light of the nature of the plaintiff's business, it is reasonable to conclude that the purpose of the policy was to provide broad coverage for all of the plaintiff's property.[4]

Furthermore, whenever possible, a contract should be construed in a manner that will give effect to all of its provisions. *See American Home Prod. Corp.*, 565 F.Supp. at 1492. In order to construe the instant policy in the manner advocated by the defendant, it would be necessary to ignore the first paragraph which states that all of the insured's property is covered.[5]

*Premiums*

The plaintiff paid two types of premiums, "transit premiums" and "location premiums." This enabled the plaintiff to obtain coverage for its inventory, whether the goods were in transit or stationary. The use of this type of premium supports the

---

clude that the parties merely intended to eliminate the $150,000 limitation on liability for that particular location which had previously been in effect.

4. Reading the policy as a whole also supports the conclusion that the parties intended to provide broad coverage. The extent of the policy's coverage is set forth in the first paragraph, which provides all personal property owned by the plaintiff would be insured. It is logical that the very first paragraph of the contract was intended to define the extent of coverage. The defendant's argument that coverage was defined in Section 6, rather than in the opening paragraph is not convincing.

5. It should also be noted that where the language in an insurance contract is susceptible to two reasonable interpretations, absent extrinsic evidence, New York courts will sustain the construction which is favorable to the insured. *See Breed v. Insurance Co. of North America*, 46 N.Y.2d 351, 353, 413 N.Y.S.2d 352, 354, 385 N.E.2d 1280, 1282 (1978); *Miller v. Continental Ins. Co.*, 40 N.Y.2d 675, 678, 389 N.Y.S.2d 565, 567, 358 N.E.2d 258, 260 (1976); *Pan American World Airways, Inc. v. Aetna Casualty & Surety Co.*, 505 F.2d 989, 999 (2d Cir.1974).

plaintiff's argument that the policy was intended to insure all of its inventory, rather than just insuring inventory at the three addresses set out under Section 6.

The insured paid a location premium of approximately $12,000 a year, and a separate transit premium of approximately $3,500. *See American Home Prod. Corp.,* 565 F.Supp. at 1505 ("Evidence of the premiums agreed to by the parties and their relation to the claims for which the insurer provided coverage ... is probative of how the parties construed the contracts at issue.)" (citing *Pan American World Airways, Inc. v. Aetna Casualty & Surety Co.,* 505 F.2d 989, 1003 (2d Cir.1974)). These premiums were based on the value of the insured's inventory, which was approximately $1,000,000.

Under Section 6 of the policy, the total limit of liability was $60,000 for losses occuring at the specified premises. Thus, the defendant is arguing that the plaintiff was paying approximately $12,000 a year in order to obtain coverage of $60,000. Interpreting the policy to provide such restricted coverage does not appear reasonable.

The plaintiff also points out that there was almost no inventory or property of value at the three locations specified in the Schedule.[6] *See* Sip Aff. at 8–9. Thus, it is reasonable to conclude that the parties specifically identified those premises in order to simply limit liability for any losses occur-

ring there. It is extremely unlikely that Parliament agreed to pay substantial premiums, based on a reported inventory of $1,000,000, in exchange for limited coverage at premises that had very little inventory. It would be unreasonable to conclude that the parties intended to provide absolutely no coverage for the greatest portion of the plaintiff's inventory, which was consistently located at premises not listed in the policy.

## CONCLUSION

■ The Court concludes that the policy here is reasonably susceptible to only one interpretation, and the intent of the parties can be determined from the face of the contract without considering extrinsic evidence. The defendant has failed to offer any evidence that raises a triable issue as to the parties' intent or any other material fact,[7] and the defendant cannot defeat summary judgment merely by asserting its preferred interpretation of the policy. *See Bethlehem Steel Co. v. Turner Constr. Co.,* 2 N.Y.2d 456, 460, 161 N.Y.S.2d 90, 93, 141 N.E.2d 590, 593 (1957) ("Mere assertion by one that contract language means something to him, where it is otherwise clear, unequivocal and understandable when read in connection with the contract, is not in and of itself enough to raise a triable issue of fact."); *accord Loblaw,* 57 N.Y.2d at

6. Parliament kept books, records, samples and returns at 42 W. 39th Street, and kept nothing at 468 Park Avenue South. The Fleischer Finishing plant had done only one shipment for Parliament between 1981 and the date of the fire. *See* Sip Aff. at 8–9.

7. Although two individuals submitted affidavits on behalf of the defendant, the affidavits are insufficient to prevent summary judgment. *See* Rule 56(e). The affidavit submitted by Donald Mahady ("Mahady") merely sets forth conclusory assertions. The only statement that could be considered relevant pertains to what type of policy the plaintiff requested. Mahady, however, was not involved in negotiating the policy, and it appears that his statement concerning the plaintiff's request is not based on firsthand knowledge of the facts. Furthermore, Parliament's Controller, Mr. Sip, has submitted an affidavit stating that he obtained the policy on

behalf of Parliament, and that he did not request the type of policy described by Mr. Mahady in his affidavit.

The affidavit and reply affidavit submitted by Richard Rafinski ("Rafinski") consists of conclusory assertions concerning how the policy should be interpreted. Nothing in those affidavits raises a material issue of fact. The Rafinski affidavit specifically dwells on a letter which was given to the defendant by the plaintiff. That letter was written after the fire occurred at the Jamel plant, but the plaintiff pre-dated the letter, so that it appeared that the letter had been written prior to the fire. The plaintiff advised the defendant of what had happened before the defendant took any action based on the letter. Although the plaintiff was foolish to have taken such an action, the letter has no bearing on what the parties intended the policy to cover at the time that they entered into the contract.

877, N.Y.S.2d at 43, 442 N.E.2d at 441 (The court should not strain "to find ambiguity which otherwise might not be thought to exist."). Accordingly, for the reasons set forth above, the defendant's motion for summary judgment is denied, and the plaintiff's motion for partial summary judgment is granted.

So ordered.