I. WALTER MUNZER et al., Respondents-Appellants, v ST. PAUL FIRE AND MARINE INSURANCE COMPANY et al., Appellants-Respondents.

Third Department, February 23, 1989

194

APPEARANCES OF COUNSEL

*Adams, Duque & Hazeltine (LaPann, Reardon, Morris, Fitz-Gerald & Firth, P. C. [Peter D. FitzGerald]* of counsel), for St. Paul Fire and Marine Insurance Company and another, appellants-respondents.

*Carter, Conboy, Bardwell, Case, Blackmore & Napierski (Wiley, Rein & Fielding [Marilyn E. Kerst* and *Thomas W. Brunner]* of counsel), for Maryland Casualty Company, appellant-respondent.

*Miller, Mannix & Pratt, P. C. (Benjamin R. Pratt, Jr.,* of counsel), for respondents-appellants.

*Mudge, Rose, Guthrie, Alexander & Ferdon (Paul R. Koepff* and *Kathleen A. Gallagher* of counsel), for Insurance Environmental Litigation Association, *amicus curiae.*

## OPINION OF THE COURT

HARVEY, J.

Plaintiffs commenced this action against defendants, St. Paul Fire and Marine Insurance Company, St. Paul Mercury Insurance Company (hereinafter collectively referred to as St. Paul) and Maryland Casualty Company (hereinafter Maryland), seeking, *inter alia,* a declaration that defendants wrongfully refused to indemnify or represent them in various actions instituted against them as a result of plaintiffs' operation from 1971 through June 1984 of a mercury thermometer manufacturing factory in Poultney, Vermont. Plaintiffs allege that they are entitled to such representation and indemnification pursuant to policies of general liability insurance apparently issued to them by defendants in New York.

The record shows that during the manufacturing process at the plant there was inadvertent breakage of thermometers or spillage of mercury which resulted in excessive levels of mercury vapor in the air. Apparently, there was further contamination of the floors and walls of the plant which may have been carried to the automobiles and homes of plant employees on their shoes and clothing. It also appears that the plant's drains and sewage pipes, that led to the Poultney Sewage Disposal Plant, became contaminated due to plaintiffs pouring used mop water containing mercury down the drains.

The following actions or proceedings have been instituted against plaintiffs in Vermont: (1) an action by Vermont and others for money damages and other relief for the contamina-

tion of the Poultney sewer system, (2) a proceeding by the Vermont Department of Health to compel plaintiffs to decontaminate the homes and automobiles of plaintiffs' employees, and (3) actions commenced by former employees of plaintiffs for money damages for personal injuries and property damage alleged to have been caused by mercury contamination. All defendants represented plaintiffs in the action by Vermont but refused representation in the Department of Health proceeding. Only Maryland refused to represent plaintiffs in the actions commenced by plaintiffs' former employees.

The Vermont action resulted in a judgment, entered by stipulation, finding, *inter alia,* that plaintiffs had violated Vermont water pollution control laws and required plaintiffs to clean up the plumbing and sewers connected to the Poultney plant, as well as the sewage treatment plant itself. Alternatively, the judgment required plaintiffs to pay money damages. In the administrative proceeding, plaintiffs were required by an order of the Vermont Department of Health to decontaminate the homes and automobiles of the former employees. The suits by the former employees are still pending.

Plaintiffs' complaint in this action seeks not only a declaration of plaintiffs' rights of representation and indemnification in any completed or pending lawsuit but also in any action or proceeding for mercury contamination brought against them in the future. Before all discovery proceedings were completed in this action, plaintiffs moved for partial summary judgment for the declaratory relief previously described. Supreme Court denied all aspects of the motion except for a declaration that Maryland was required to defend plaintiffs in the pending employee suits. All parties appeal from the order entered.

Elementary to the determination of this appeal is a consideration of the limitations to the entitlement of summary relief encompassed by CPLR 3212. This statute provides, in relevant part, that: "A motion for summary judgment shall be supported by affidavit, by a copy of the pleadings and by other available proof, such as depositions and written admissions. The affidavit shall be by a person having knowledge of the facts; it shall recite all the material facts; and it shall show that there is no defense to the cause of action or that the cause of action or defense has no merit. The motion shall be granted if, upon all the papers and proof submitted, the cause of action or defense shall be established sufficiently to warrant the court as a matter of law in directing judgment in favor of

any party. Except as provided in subdivision (c) of this rule the motion shall be denied if any party shall show facts sufficient to require a trial of any issue of fact" (CPLR 3212 [b]). Summary judgment is a drastic remedy and "should not be granted where there is any doubt as to the existence of a triable issue" *(Moskowitz v Garlock,* 23 AD2d 943, 944; *see, State Bank v McAuliffe,* 97 AD2d 607, *appeal dismissed* 61 NY2d 758). Accordingly, the focus of the court must be on issue identification rather than issue determination *(see, Cunningham v General Elec. Credit Corp.,* 96 AD2d 502).

█ With these principles in mind, the first issue to be addressed is whether Supreme Court properly granted plaintiffs' summary judgment motion to the extent of holding that Maryland has a duty to defend plaintiffs in the pending lawsuits instituted by plaintiffs' former employees. The court determined that the remaining issues raised by the parties were factual ones requiring resolution at trial. We agree with the result arrived at by Supreme Court although our reasons for finding that Maryland has a duty to defend in the employee suits differ from those stated by Supreme Court.

It is settled law that: "An insurer's duty to defend an action against the insured is measured, in the first instance, by the allegations in the plaintiff's pleadings, and if such pleadings state facts bringing the injury within the coverage of the policy, the insurer must defend, irrespective of the insured's ultimate liability to the plaintiff" (7C Appleman, Insurance Law and Practice § 4683, at 42 [Berdal ed]; *see, Zurich-American Ins. Cos. v Atlantic Mut. Ins. Cos.,* 139 AD2d 379, 384). Here, as outlined by Maryland, coverage under the Maryland liability insurance policies is limited to sums which the insured is "legally obligated to pay as damages because of bodily injury or property damage caused by an occurrence". An "occurrence" in the Maryland policies is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage *neither expected nor intended from the standpoint of the insured"* (emphasis supplied).

Maryland vigorously argues that it has no duty to defend or indemnify in any of the suits brought against plaintiffs because the mercury contamination was not an "occurrence" as defined in its policies. Supreme Court premised Maryland's duty to defend upon the alleged invalidity of a "pollution exclusion" clause contained in the Maryland policies due to the existence of a Vermont law or policy disallowing such

clauses during the pertinent time periods. Our review of the record reveals, however, that Maryland had earlier conceded the inapplicability of the pollution exclusion clause because it had previously accepted its deletion after receiving a notice sent by the Vermont Department of Banking and Insurance. Maryland does not presently assert the applicability of that clause.

Nonetheless, our examination of the allegations contained in the complaints of the employee suits shows that they in fact did trigger Maryland's duty to defend as a matter of law. On their face, the complaints allege personal and property damage by plaintiffs bringing them within the scope of the policies' coverage *(see, Zurich-American Ins. Cos. v Atlantic Mut. Ins. Cos.,* 139 AD2d 379, 384, *supra).* This holds true regardless of defendants' ultimate obligation to indemnify, which, in the case of the pending employee suits, cannot be resolved until trial *(see, supra).* Significantly, "[e]ven where the complaint does not state facts with sufficient definiteness to clearly bring the case within or without the coverage of the policy * * * if there is potentially a case within the coverage of the policy the insurer is obliged to defend" *(Lapierre, Litchfield & Partners v Continental Cas. Co.,* 59 Misc 2d 20, 23, *mod* 32 AD2d 353). Moreover, an insurer denying a duty to defend has the burden to establish as a matter of law on a summary judgment motion that the injury complained of falls outside the coverage of the policy or that claims against the insured are unambiguously exempted from coverage *(see, Smith Jean, Inc. v Royal Globe Ins. Cos.,* 139 AD2d 503, 504). As the following discussion will show, defendants have established neither assertion as a matter of law and Supreme Court properly delineated Maryland's duty to defend.

With respect to defendants' duty to indemnify in the completed action and proceeding,[1] an obligation distinct from any duty to defend *(Zurich-American Ins. Cos. v Atlantic Mut. Ins. Cos., supra),* plaintiffs contend that their liability in the various suits resulted from a series of unintended or unexpected events that they maintain fit into the definition of an "occur-

---

1. Supreme Court did not address the question of defendants' possible duty to defend in the completed Vermont Department of Health proceeding. We also decline to consider the issue since almost nothing appears on the record concerning the matter other than the final order itself and no determination concerning it can be made as a matter of law.

rence" in defendants' policies.[2] The issues in this case relating to pollution and the potential liability of insurers to provide coverage for these risks is the subject of extensive litigation in New York *(see, e.g., Powers Chemco v Federal Ins. Co.,* 144 AD2d 445; *Technicon Elecs. Corp. v American Home Assur. Co.,* 141 AD2d 124). The concern of the insurance industry as to these issues is evidenced by the Insurance Environmental Litigation Association's submission of an *amicus curiae* brief in this litigation. Great issues aside, however, our review of the numerous cases submitted by the parties shows no uniformity of decisions on these issues. This makes it even more crucial for us to know the precise facts before any law can be applied.

It is plaintiffs' burden as the insureds to prove that the general provisions of the policies provide coverage *(see, Lapierre, Litchfield & Partners v Continental Cas. Co.,* 59 Misc 2d 20, 23, *supra).* Whether an event is intended or expected from the standpoint of the insureds herein would depend upon the extent of plaintiffs' knowledge, either actual or constructive, of the dangerous properties of the matter being dealt with. Significantly, plaintiffs operated this factory over a 13-year time span. The record is deficient, however, with respect to the general knowledge in the industry regarding mercury danger and handling procedures during this time period. The record does not explain the properties of mercury, particularly as to whether it can be diluted to the extent that it becomes harmless.

■ On this record, it cannot be ascertained as a matter of law that plaintiffs "intended" or expected to cause the damage that resulted, or even that they were substantially certain that such damage would result from their manner of operating the plant *(see, Atlantic Cement Co. v Fidelity & Cas. Co.,* 91 AD2d 412, 417, *affd* 63 NY2d 798). Whether an insured intended the consequences of its actions is normally a question of fact and not one of law *(see, McGroarty v Great Am. Ins. Co.,* 36 NY2d 358). Here, the information submitted on appeal raises more questions than it provides answers. Not all of the facts necessary to make a determination are available. For instance, the record shows that one of plaintiffs' expert consultants advised them to use a sodium thiosulfate solution (HgX) to mop their floors. However, there is no evidence as to

---

2. The St. Paul definition of "occurrence" is substantially similar to that employed in the Maryland policies.

whether plaintiffs were ever warned that the used mop water would still contain mercury, thus requiring an alternative disposal method other than the drains. Without any factual conclusions to these questions, the resolution of whether these instances were occurrences must await trial. " 'To deny coverage * * * [a] fact finder must find that the insured intended to cause damage' " (*General Acc. Ins. Co. v Manchester*, 116 AD2d 790, 792, quoting *Continental Ins. Co. v Colangione*, 107 AD2d 978, 979).

Finally, we turn to St. Paul's contention that, regardless of whether the incidents complained of were occurrences under the policies, it properly denied coverage to plaintiffs because of a "pollution exclusion" clause contained in its policies. The clause basically provides that coverage under the policies does not apply: "[T]o bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental"* (emphasis supplied).[3] As noted previously, Maryland has disavowed any applicability of the exclusion clause to its own policies because of a Vermont law or policy against the use of such clauses in policies covering Vermont insureds. St. Paul insists, however, that New York law applies and, thus, the clause is viable. Supreme Court apparently disagreed and found that Vermont law applied to these proceedings and forbids the operation of any pollution exclusion clause contained in the policies.

We find that there is insufficient evidence in the record to make a choice of law determination. Generally speaking, in conflict of laws situations, a court must determine which law governs a particular transaction and then determine what the foreign law is *(see,* 19 NY Jur 2d, Conflict of Laws, § 3, at 573). With respect to determining which law applies, the record is deficient for purposes of making such a determination. New York generally gives controlling effect to the law of the jurisdiction which has the greatest interest in the matter *(see, Babcock v Jackson*, 12 NY2d 473). Important factors in mak-

---

**3.** Although some papers in the record state that the last line in the clause reads "sudden *or* accidental", the correct phraseology appears to be as written above (emphasis supplied).

ing this determination are, for example, location of the insured risk, residence of the parties, and where the contract was issued and negotiated *(see, e.g., Steinbach v Aetna Cas. & Sur. Co.,* 81 AD2d 382; *Colonial Penn Ins. Co. v Minkoff,* 40 AD2d 819, *affd* 33 NY2d 542). In the case at bar, however, the parties dispute the majority of these issues and no evidence on the record satisfactorily supports either side. Not even the policies themselves appear on the record in their entirety. Allegedly, the policies contemplated events in many jurisdictions *(see, General Acc. Fire & Life Assur. Corp. v Ganser,* 2 Misc 2d 18, 21-22).

As for determining the Vermont law, we cannot properly ascertain what the exact law is in that State for the purpose of determining whether a conflict exists between the jurisdictions. Mindful of our obligation to take judicial notice of a sister State's laws pursuant to CPLR 4511 (a), we have been unable to find the unspecified "legislation" referred to by the parties which allegedly embodies the Vermont law on the subject. The parties cite no applicable law of Vermont despite their obligation to assist the court in these matters *(see, Government Employees Ins. Co. v Sheerin,* 65 AD2d 10, 15). The only evidence in the record having a bearing upon this matter is an affidavit from a representative of the Vermont Department of Banking and Insurance outlining the policy of his agency to refuse to approve insurance policies which contained the pollution exclusion clause. However, there is no evidence of the qualifications of this individual to testify as to Vermont law and its effect upon policies of insurance issued outside his State. Under these circumstances, we are unable to reach a conclusion as to choice of law at this time.

Even were we to apply New York law and consider the exclusionary clause as urged by St. Paul, we would still find that questions of fact exist which preclude summary judgment. It is well settled that the "burden of proving that a claim falls within the exclusions of an insurance policy rests with the insurer" *(Neuwirth v Blue Cross & Blue Shield,* 62 NY2d 718, 719; *see, Facet Indus. v Wright,* 62 NY2d 769, 771; *Utica Mut. Ins. Co. v Prudential Prop. & Cas. Ins. Co.,* 103 AD2d 60, 63, *affd* 64 NY2d 1049). While St. Paul contends that the pollution exclusion clause excludes coverage as a matter of law, plaintiffs argue that, even if the clause applies, it does not bar coverage because plaintiffs are within the "sudden and accidental" exception to the pollution exclusion clause. According to plaintiffs, they never intended to lose or

discharge any mercury, either into the atmosphere or the sewer drains, since they need it for their business. As a result, any discharge and resulting contamination was purely accidental from their perspective *(see, Allstate Ins. Co. v Klock Oil Co.,* 73 AD2d 486, 488). Moreover, the "sudden and accidental" language of the exclusion should be construed in the context of the facts of each particular case *(Colonie Motors v Hartford Acc. & Indem. Co.,* 145 AD2d 180 [decided herewith]). As such, more information is needed to resolve the application of the pollution exclusion clause in this case.

Despite the possible merit of the parties' arguments on these points, we lack sufficient factual information to reach a conclusion on these issues at this time *(see, Somers v Bankers Life & Cas. Co.,* 142 AD2d 780; *Hartford Acc. & Indem. Co. v Transamerica Ins. Co.,* 141 AD2d 423). Accordingly, summary judgment must be denied as to all issues raised by the pleadings except defense of the actions.

CASEY, J. P., MIKOLL, YESAWICH, JR., and MERCURE, JJ., concur.

Order affirmed, without costs.