Argued and submitted February 20, affirmed December 4, 1985

# AMERICAN FEDERAL SAVINGS AND LOAN ASSOCIATION et al,
*Plaintiffs,*

*v.*

## RICE et al,
*Defendants,*

*and*

### RICE,
*Defendant and Third Party Plaintiff and Respondent,*

*v.*

## SAFECO INSURANCE COMPANY OF AMERICA,
*Third Party Defendant and Appellant.*

(82-1105; CA A31312)

711 P2d 150

Donald J. Friedman, Portland, argued the cause for appellant. With him on the briefs were William Larkins, Jr., and Black, Tremaine, Lankton, Krieger & Schmeer, Portland.

James H. Gidley, Portland, argued the cause for respondent. With him on the brief were Michael J. Scott and Furrer & Scott, Tigard, and Cosgrave, Kester, Crowe, Gidley & Lageson, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

This action originated as one on a promissory note and for judicial foreclosure of a real property mortgage, on the basis of an alleged failure of Larry and Rebecca Rice (defendants in that action) to make the mortgage payments. Larry Rice brought a third party action against Safeco Insurance Company for damages for breach of a contract of fire insurance on the property, which resulted in a jury verdict and judgment in favor of Rice for $56,000. Safeco appeals from the judgment in that action.

■ Safeco asserts six assignments of error, which we discuss in relation to the two principal issues. The first two assignments are that the trial court erred in denying its motions for a directed verdict at the close of the plaintiff's case and at the close of all of the evidence. They present the question of whether there is competent evidence from which the jury could reach a verdict in favor of Rice. In reviewing the propriety of the trial court's rulings, we view the evidence in the light most favorable to Rice and grant him the benefit of all reasonable inferences that may be drawn from the evidence. *See Simpson v. Sisters of Charity of Providence,* 284 Or 547, 588 P2d 4 (1978).

The evidence established that on April 30, 1981, Rice contacted an insurance agent in Newberg about procuring fire insurance on a then-vacant rental house. The agent, Wright, determined that coverage could be procured for an annual premium of $147. Rice gave Wright $100 in cash and agreed to pay the balance later. Wright accepted the $100 and bound Safeco to insure the house. Later Rice received from Safeco an insurance policy with coverage to April 30, 1982.

There is substantial dispute over other relevant events, and the documentary evidence in the record is scant. Rice testified that he paid the $47 balance directly to Wright in cash when he saw him in a restaurant several weeks after paying the first $100. Wright denied receiving the $47 payment. Rice acknowledged receiving from a Beaverton insurance agency, Benson and Wilson, a notice that Safeco was placing him on an installment payment plan and a later notice of cancellation of insurance; he testified that he disregarded the notices, because they were from a different agency and because he had already paid the full amount of the premium to

Wright.[1] Wright testified that he received a notice from Safeco that Rice's insurance policy had been cancelled for nonpayment of the premium and that in September, 1981, he met with Rice to arrange reinstatement of the policy. According to Wright, he told Rice at that time that $100 was needed for reinstatement; Rice agreed to use for that purpose a $47 unearned premium credit from the original policy and gave him an additional $53 in cash, and Wright forwarded those sums to Benson and Wilson to be submitted to Safeco to reinstate the policy. Rice denied both the meeting and the payment described by Wright. There is evidence that Safeco issued Rice a policy, effective from September 12, 1981, to September 12, 1982. Rice testified that he received a notice stating that his policy had been reinstated and that further installment payments were due but that he again disregarded it, because he had already paid Wright the full premium for a one-year policy.

An operations officer for Safeco testified that Safeco sent Rice a billing for the first installment payment due on the reinstated policy. Rice testified that he was uncertain whether he had received such a bill, and no copy of the bill is in evidence. The officer also testified that Safeco sent Rice a cancellation notice on that policy, but none was offered as an exhibit. Wright testified that, in January, 1982, he received from Safeco a notice of cancellation of Rice's reinstated policy and that on either January 18 or January 28, 1982, he sent Rice a letter, advising him that the policy had been cancelled effective January 11, 1982, and accompanied the letter with a check in the amount of $50.50 for the unearned premium.

Although Safeco's attorney elicited some responses from Rice on cross-examination to the effect that he had received notice of the cancellation from Wright, on direct examination Rice unequivocally denied receiving Wright's letter; but he testified that he had received the check, together with a statement identifying it as a "dividend," directly from Safeco's Lake Oswego office. Rice cashed the check on February 9, 1982. A copy of the cancelled check and of Wright's letter were admitted into evidence. Also in evidence are copies of notices of cancellation from Safeco to mortgagees of the

---

[1] Wright apparently was a limited partner in the Benson and Wilson insurance agency.

subject property, American Savings and Loan and G.E.C.C., advising of cancellation of Rice's policy as of January 31, 1982, and March 29, 1982, respectively.

The house which was the subject of the insurance policies was destroyed by fire on February 26, 1982, and Rice contacted Wright at Wright's office to file a proof of loss. According to Wright, Rice was alone; after Wright told Rice that he had no insurance on the house, Rice offered him a share of the proceeds if he would backdate documents so that Safeco would indemnify Rice for the loss. Rice and his wife testified that they went to Wright's office together, and both denied any bribery attempt.

Safeco argues that a directed verdict should have been granted, because Rice failed to carry his burden to prove a contract of insurance providing coverage was in effect on the date of the fire. The thrust of its argument is that an insurer may cancel a fire insurance policy for any reason on proper written notice to the insured, *see* ORS 743.636, that Rice admitted receiving a notice of cancellation in January, 1982, and that Rice undeniably received and cashed Safeco's premium refund check. Safeco argues that Wright's letter advising Rice that the insurance had been cancelled, together with the refund check, met the requirements for valid cancellation of a policy[2] and that, considering Rice's admission, the evidence is undisputed that Safeco validly cancelled the policy before the fire and, therefore, there was no coverage on that date.

■, ■ Although the evidence is not uncontroverted, we conclude that Rice's testimony that he paid the full premium to Wright for a fire insurance policy effective April 30, 1981, to

---

[2] ORS 743.636 provides, in relevant part:

"A fire insurance policy shall contain a provision as follows: * * * This policy may be canceled at any time by this company by giving to the insured a five days' written notice of cancellation with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium, if not tendered, will be refunded on demand."

The comparable clause in Safeco's policy issued to Rice is identical, with the exception of the last sentence, which reads: "Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand." We express no opinion on whether the letter and check together would meet the notice criteria of ORS 743.636.

April 30, 1982, was sufficient for the jury to find that he had purchased the initial policy. Other evidence established that, for whatever reason, Safeco cancelled that policy and issued Rice a second policy, effective September 12, 1981, to September 12, 1982. That evidence was sufficient to allow the jury to find that Rice had insurance coverage for the relevant time. To avoid liabililty, Safeco then had to prove its affirmative defense that Rice's September policy was cancelled before the date of the loss. *See Medford v. Pac. Nat'l Fire Ins. Co.,* 189 Or 617, 627, 219 P2d 142, 222 P2d 407 (1950).

■ Contrary to Safeco's assertion, we do not find the evidence that Safeco validly cancelled Rice's policy undisputed. On direct examination, Rice admitted receiving in January, 1982, only a statement and a check from Safeco; he expressly denied receiving a letter from Wright advising of Safeco's cancellation. That responses elicited from Rice on cross-examination tended to expose contradictions in his testimony did not require the jury to find that Rice received the requisite written notice. Evaluation of testimony was the jury's task, and it could have chosen to believe Rice's testimony in areas of conflict. Whether there was coverage was a question of fact properly submitted to the jury for its determination; the trial court did not err in denying Safeco's motions for a directed verdict.

We next consider Safeco's fourth and sixth assignments. In its answer, it alleged as its first affirmative defense:

"VIII

"The contract of insurance between Rice and Safeco contains the following provision:

" 'Concealment, fraud. This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning the insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.'

"IX

"Rice is not entitled to recover under the insurance policy because he breached the provision quoted in paragraph VIII above by making a false claim and by misrepresenting the circumstances of the loss."

The quoted policy provision is in the form required by ORS

743.612 to be a part of every fire insurance policy. The trial court struck that portion of the answer on the ground that there was no evidence to support it; Safeco assigns error to that action as its fourth assignment. The court also refused to give Safeco's requested jury instructions that related to that defense; that refusal is the basis for its sixth assignment.

In this case, the sole allegation of fraud is that Rice attempted to bribe Wright to backdate documents to establish coverage on the date of the fire. Safeco argues that the overt act of offering a bribe is itself fraud and a misrepresentation of a material fact—the fact of coverage. Noting that the purpose of ORS 743.612 is to discourage insurance fraud, *see Mutual of Enumclaw Ins. v. McBride,* 295 Or 398, 667 P2d 494 (1983), Safeco asserts that offering a bribe is a type of reprehensible conduct that public policy demands be penalized by loss of anticipated insurance benefits. Rice counters alternatively that there can be no false claim or misrepresentation as to the existence of coverage, because the jury found that coverage was available for the loss and the alleged conduct is not within the scope of the policy provision.

5.      We reject the proposition that the jury's conclusion that Rice had coverage under an existing policy is determinative, because a finding of coverage necessarily must precede a finding that the coverage is voided under ORS 743.612. The issue, therefore, is whether the alleged bribery attempt is proscribed conduct within the meaning of ORS 743.612 and the policy provision. Our research has disclosed no decisions that address that precise point. Although Safeco relies on *Fine v. Bellefonte Underwriters Ins. Co.,* 725 F2d 179 (2d Cir), *cert den* ___ US ___ 105 S Ct 233 (1984), for the proposition that the attempted bribe was an act of deceit "because it might have affected the attitude and action of the insurer" on the issue of coverage, we find that case inapposite; the question there was not whether an attempted bribe was proscribed under identical provisions, but the materiality of a false sworn statement concerning the temperature setting of a thermostat. 725 F2d at 184.

■■      We conclude that the alleged bribery attempt in this case is not proscribed conduct under ORS 743.612. The conduct sought to be prevented by ORS 743.612 includes that related to false claims concerning the amount of loss or the

circumstances of the fire and false statements that prevent or hamper investigation of the claim. Although an insured's conduct in bribing an agent in order to procure coverage, if resulting in fraudulent representations or omissions in the application, might prevent a recovery under a subsequently issued policy, *see* ORS 743.042, we do not think that an individual's offer to pay an agent to assist the individual in procuring coverage, like the offer alleged here, is deceit that could affect an insurer's judgment in processing a claim under then existing coverage, so as to justify the sanction of loss of contract benefits to which the individual would be otherwise entitled. In other words, we do not think that, if an insured has coverage under a valid insurance policy but attempts to bribe the agent of the insurer in the mistaken belief that the policy does not provide coverage, ORS 743.612 voids the otherwise valid policy.

■ We conclude that the trial court did not err in striking Safeco's affirmative defense of fraud under the policy provision required by ORS 743.612. Accordingly, it also did not err in failing to give Safeco's requested jury instructions relevant to that defense.

■ In its two remaining assignments, Safeco claims error in the trial court's denial of its motions for a judgment notwithstanding the verdict or, in the alternative, a new trial. *See* ORCP 63. Neither an order denying a motion for judgment notwithstanding the verdict nor an order denying a motion for a new trial is appealable, *Highway Com. v. Helliwell,* 225 Or 588, 593, 358 P2d 719 (1961), and we do not consider those assignments.

Affirmed.