NIPKOW & KOBELT, INC.,
PARLIAMENT TEXTILE
DIVISION, Plaintiff,

v.

The NORTH RIVER INSURANCE
CO., Defendant.

No. 85 Civ. 535 (CHT).

United States District Court,
S.D. New York.

May 7, 1987.

---

**1186**

Botein Hays & Sklar, New York City, for plaintiff; Lawrence M. Kaye, Ezio Scaldaferri, of counsel.

Greenhill and Rubin, New York City, for defendant; Charles T. Rubin, of counsel.

## OPINION

TENNEY, District Judge.

Nipkow & Kobelt, Inc., Parliament Textile Division ("Parliament" or "plaintiff") instituted this diversity action to recover on a fire insurance policy ("policy") issued by the defendant, The North River Insurance Co. ("North River" or "defendant"). In 1984, almost $600,000 of Parliament's inventory was destroyed by a fire. After it was notified of the loss, North River conducted an investigation and refused to pay the claim, contending that the location where the loss occurred was not covered by the policy.[1] The plaintiff subsequently filed this motion to recover on its claim for the loss. The case now focuses on whether false statements submitted by the insured activated the anti-fraud provision of the policy.

Parliament claims that it is entitled to summary judgment because (i) statements it submitted after the fire did not misrepresent any material facts or circumstances and (ii) the anti-fraud provision in the policy was not intended to cover such statements. North River disputes these contentions and cross-claims to void the policy on the ground that Parliament violated its anti-fraud provisions.[2]

The Court concludes that North River is entitled to summary judgment dismissing the action.

## BACKGROUND

The principal facts are not in dispute. On March 14, 1984, a fire occurred at Par-

---

1. In a previous decision, this Court found that the policy covered the location of the fire loss. *Nipkow & Kobelt, Inc. v. North River Ins. Co.*, 633 F.Supp. 437 (S.D.N.Y.1986).

2. Defendant asserts two additional claims: (i) plaintiff committed fraud that voided the policy by swearing falsely regarding the occupancy and location of the insured property; and (ii) plaintiff committed fraud by swearing falsely regarding the amount of the claim. The Court need not address these issues since the fraud in connection with the letter and the swearing is sufficient to grant defendant summary judgment.

liament's Jamel Factory in Lebanon, Pennsylvania. One week later, North River delivered to Parliament a non-waiver agreement[3] which specifically stated that North River believed there was a question of coverage for the location of the loss. Parliament signed the statement as requested by North River. An investigation of the claim ensued.

On March 28, 1984, Parliament's insurance agency, The Maloy Agency, Inc. ("Maloy"), submitted a letter to North River. The letter, purportedly dated June 30, 1983, was written on Parliament's stationery and gave notice to Maloy that Parliament was using the Lebanon, Pennsylvania location.[4] In April 1984, Maloy sent a statement to North River verifying its receipt of the letter on or about June 30, 1983. In an examination under oath on June 6, 1984, Parliament's comptroller, Henry Sip, stated that the letter was submitted to Maloy sometime between June 1, 1983 and July 30, 1983.

In a second examination under oath on October 12, 1984, Sip admitted that the letter had not originated until after the fire loss and he had not become aware of it until May 1984. On the same day, the drafter of the letter, Martin Shapiro, similarly swore that the letter had been created after the fire loss and that he had informed Sip of the letter in May 1984.

## DISCUSSION

Summary judgment is appropriate under existing law if there can be only one rea-

---

**3.** A non-waiver agreement is a document which "reserves to [the] insurer every right under [a] fire [insurance] policy not previously waived, and to the insured every right which had not been forfeited." Black's Law Dictionary 955 (5th ed. 1979).

**4.** Maloy was also an agent for the defendant. Therefore, if the letter had in fact been submitted in 1983, the policy would have been amended to cover the location which suffered the fire loss, and the issue of coverage would never have arisen.

**5.** The Court is not confronted with a provision which could reasonably be interpreted as covering only fraud in the inducement of the policy. A policy which states that it "is void if any

sonable conclusion, *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Moreover there is no genuine issue for trial if there is insufficient evidence for the jury to render a verdict in favor of the opposing party. *Id.* The Court has considered all of the parties' submissions and concludes that, based upon the undisputed facts, summary judgment is appropriate under Fed.R.Civ.P. 56.

### 1. Contract Construction

■ Plaintiff asserts that the policy's anti-fraud provision is not applicable in these circumstances. The provision states:

This entire policy shall be void if the Assured has concealed or misrepresented in writing, or otherwise, any material facts or circumstances concerning this insurance or the subject thereof, or if the Assured shall make any attempt to defraud the Company either before or after loss.[5]

In analyzing this provision, the Court notes that "in the absence of ambiguity, words are to be given their ordinary meaning." *State Farm Mutual Auto Ins. Co. v. Westlake*, 35 N.Y.2d 587, 591, 364 N.Y.S. 2d 482, 485, 324 N.E.2d 137, 139 (1974). In addition, the "insurer is entitled to have its contract of insurance enforced in accordance with its provisions and without a construction contrary to its express terms." *Bretton v. Mutual of Omaha Ins. Co.*, 110 A.D.2d 46, 49, 492 N.Y.S.2d 760, 763 (1st Dep't), *aff'd*, 66 N.Y.2d 1020, 499 N.Y.S.2d 397, 489 N.E.2d 1299 (1985).

The Court holds that the plaintiff's false statements were encompassed within the

insured has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance" will be construed against the insurance company. *North River Ins. Co. v. Good Morning Farms, Inc.*, 105 A.D.2d 1095, 1096, 482 N.Y.S.2d 163, 164 (4th Dep't 1984). In this case, the provision specifically states that the policy is void if the insured makes any attempt to defraud the insurer "either before or after loss." This provision "is clearly worded so as to encompass fraudulent claims for loss made under the policy *after* it becomes effective as well as misrepresentations made in connection with the policy itself or its initial issuance." *Id.* (emphasis in original).

scope of the anti-fraud provision, which specifically states that "any attempt to defraud the Company either before or after loss" will render the policy void.

Plaintiff claims that the decision in *American Fed. Savings & Loan Ass'n v. Rice*, 76 Or.App. 635, 711 P.2d 150 (Or.Ct. App.1985), supports its contention that the provision was not intended to cover conduct aimed at coverage. The Court does not agree. In *Rice*, an attempt to defraud was alleged, but there was no evidence to establish that the fraud ever materialized. Here there is undisputed evidence that false statements were submitted, so *Rice* is clearly distinguishable. However, even if *Rice* is deemed "analogous" to the instant matter, the Court is obliged to follow the law of New York which does not restrict the application of the anti-fraud provision.

### 2. *Voiding the Policy*

■ It is the established law in this state that an insurance company seeking to abrogate a fire insurance policy based upon fraudulent swearing or statements of loss must show that the submissions were false, willfully made, and material to the insurer's investigation.[6] *Fine v. Bellefonte Ins. Co.*, 758 F.2d 50, 52 (2d Cir.), *cert. denied*, 474 U.S. 826, 106 S.Ct. 86, 88 L.Ed. 2d 70 (1985); *Deitsch Textiles, Inc. v. New York Property Ins. Underwriting Ass'n*, 62 N.Y.2d 999, 1001, 479 N.Y.S.2d 487, 488, 468 N.E.2d 669, 670 (1984). If such proof is presented, North River will be entitled as a matter of law to rescind the policy.

### A. *Falseness*

Based upon the record before the Court, there is no question that plaintiff submitted false statements. On June 6, 1984, plain-tiff swore under oath that the letter dated June 30, 1983 was delivered to Maloy in 1983. On October 12, 1984, plaintiff swore under oath that the statements made on June 6 were false and that the letter had in reality been created after the fire. Moreover, the Court notes that "[f]or purposes of this motion only, [Parliament] assume[d] that the letter (and Mr. Sip's statements about it) were false and willfully made."[7] Plaintiff's Memorandum at 5.

Plaintiff does not present any affidavit or other evidence to explain the letter or swearing, or otherwise confront the issue of falseness.[8] Consequently, the Court concludes that plaintiff's letter and the initial swearing regarding the letter were false.

### B. *Willfulness*

The Court must also examine Parliament's statements to determine whether they were made willfully.[9] It has been held that when the insured submits false documents and swears falsely under oath, then subsequently admits to the falseness of the statements, the only reasonable conclusion is that the insured's actions were purposeful. *Sunbright Fashions, Inc. v. Greater New York Mut. Ins. Co.*, 34 A.D. 2d 235, 237, 310 N.Y.S.2d 760, 761 (1st Dep't 1970), *aff'd*, 28 N.Y.2d 563, 319 N.Y. S.2d 609, 268 N.E.2d 323 (1971).

In this case, the falseness of the letter and testimony as to its date of origin are undisputed. "[I]t is impossible to conceive of the false swearing here as being mistaken or unintentional," *id.*, and plaintiff acknowledged as much by its admission that the statements were false and willfully made. Had the letter been accepted by

---

**6.** The Court can select either because "[t]here is no distinction between false statements made in proof of loss statements and false statements made under oath." *Fine*, 758 F.2d at 52.

**7.** Plaintiff elsewhere stated that it did not "concede that it committed fraud." Plaintiff's Reply Memorandum at 11 n. 11. However, the Court does not consider plaintiff's original statement to be a determinative factor but construes it as a component in the overall analysis.

**8.** Moreover, in its affidavit in support of its motion for summary judgment, defendant chal-lenged plaintiff to offer an explanation for the fabricated letter and the false swearing. Affidavit of Richard Rafinski, sworn to October 22, 1986, at ¶ 37. Plaintiff's submissions nonetheless fail to account for the false statements.

**9.** An act is done willfully when it is carried out "intentionally, knowingly, and purposely, without justifiable excuse, as distinguished from an act done carelessly, thoughtlessly, heedlessly or inadvertently." Black's Law Dictionary 1434 (5th ed. 1979).

North River as a legitimate document, the question of coverage would have been resolved in Parliament's favor. The "concoction of elaborate falsehoods plus manufacture of spurious documents to support them preclude[s] mistake and establishe[s] intent." *Id.*

■ Finally, and most importantly, plaintiff's memorandum and affidavit do not attempt to explain the submission of the fabricated letter or the false swearing. This total failure to address the issue of willfulness,[10] in view of the undisputed facts and plaintiff's own admission, leads the Court to conclude that no reasonable jury could find that plaintiff's actions were not willful.

### C. *Materiality*

■ Plaintiff claims that the letter and the statements made under oath did not concern a subject relevant and germane to defendant's investigation, and were therefore not material.[11] Plaintiff's Memorandum at 6. Plaintiff reasons that the Court's subsequent finding that coverage existed, and its determination that the letter had no bearing on the coverage itself, lead to the conclusion that the area of coverage was never a relevant area to investigate and the letter was immaterial.

The Court rejects both of plaintiff's arguments. Although this Court eventually determined that plaintiff was entitled to coverage, that finding does not foreclose the conclusion that plaintiff's false statements were material. "The law is clear that the materiality of false statements during an insurance company investigation is not to be judged by what the facts later turn out to have been." *Fine v. Bellefonte Underwriters Ins. Co.*, 725 F.2d 179, 183

(2d Cir.1984), *cert. denied*, 474 U.S. 826, 106 S.Ct. 86, 88 L.Ed.2d 70 (1985). Therefore, although this Court subsequently found that plaintiff's location was covered under the policy, the conduct of the plaintiff must be evaluated at the time of the investigation.

Turning to the actions themselves, "the materiality requirement is satisfied if the false statement concerns a subject relevant and germane to the insurer's investigation as it was then proceeding." *Id.* The Court has carefully examined the record and concludes that plaintiff's actions were material as a matter of law. The false swearing and the forged letter are material "if they may be said to have been calculated either to discourage, mislead or deflect the company's investigation in any area that might seem to the Company, at that time, a relevant or productive area to investigate." *Id.* at 184. Surely the insurer had a right to investigate the area of coverage. Moreover, the relevancy of this area is underscored by the very actions of the plaintiff. If the letter had in fact been submitted in 1983, the location of the fire loss unquestionably would have been covered. Plaintiff's letter attempted to "create" coverage for the location which experienced the fire loss. The creation of the letter coupled with the false swearing shows that "[i]t cannot be fairly contested that the object of the fraud was to mislead the insurer...." *Sunbright*, 34 A.D.2d at 237, 310 N.Y.S.2d at 762.

The Court finds that the behavior of Parliament was an attempt to mislead North River at the time of the investigation, and thus satisfies the materiality requirement.

---

**10.** Plaintiff asserts that if the case goes to trial, its subsequent confession of the falsehood will be relevant to the issue of willfulness. Plaintiff's Reply Memorandum at 8 n. 7. However, an insured's subsequent admission that his initial statements were false does not preclude a court from finding an intent to defraud and granting summary judgment to an insurer. *Sunbright*, 34 A.D.2d at 235, 310 N.Y.S.2d at 760.

**11.** In conjunction with its argument that the letter was not material, plaintiff claims that "elementary fairness" should preclude the Court

from finding that it acted fraudulently. However, elementary fairness weighs strongly in defendant's favor since plaintiff acted in bad faith by attempting to deceive the defendant. "This [anti-fraud] clause of the policy makes clear that the general rule of insurance law requiring good faith and fair dealing, applies to fraudulent statements and false swearing made by an assured after a loss." *Domagalski v. Springfield Fire & Marine Ins. Co.*, 218 A.D. 187, 189, 218 N.Y.S. 164, 166 (4th Dep't 1926).

## CONCLUSION

The Court concludes that the plaintiff's statements were false, willfully made, material to defendant's investigation, and encompassed within the scope of the policy's antifraud provision. Consequently, the Court concludes that defendant is entitled to void the policy. Its cross-motion for summary judgment is granted, and plaintiff's motion is denied.

So ordered.