OPINION OF THE COURT
 

 Jones, J.
 

 Where an insured submits a second version of the lease pursuant to the terms of which its recovery under a policy of fire insurance is to be determined, which second version was concededly prepared after the fire, the jury’s finding of no intent to defraud the insurer should not be disturbed where the proof contains testimony that the second version was prepared for the purpose of accurately reflecting the agreement reached by the landlord and tenant but imperfectly manifested in the lease originally signed. Nor was it error for the trial court to refuse the insurer’s request to charge that the filing of duplicate claims would constitute concealment and misrepresentation entitling the insurer to a verdict in its favor. There should, however, be a new trial on the issue of damages for loss of rent.
 

 
 *412
 
 Plaintiff Jonari is a corporation formed by an optometrist and a dentist, Drs. Mittleman and Zuckerman, for the purpose of establishing and operating a medical center. At the time of the events which gave rise to this lawsuit Dr. Mittleman was also a principal in a professional corporation, Mittleman & Sverdlin, P. C. (M & S). On March 24, 1975 Jonari entered into a sublease with O’Brien Enterprises, Inc. (O’Brien), itself the lessor of premises at 5536 Broadway, Bronx, under which O’Brien, also a contractor, was to remodel the premises at the leased site in accordance with plans provided by Jonari so as to construct multiple accommodations which Jonari in turn might lease to a variety of medical specialists. The president of O’Brien testified that included in the rent to be paid by Jonari was an amount to reimburse the contractor for the expenditures it would put into the structure for improvements and betterments to comply with Jonari’s specifications.
 

 On July 1, 1975 St. Paul Fire & Marine Insurance Company issued a policy insuring Jonari against fire loss at the leased premises, including provision for rents lost following a fire. Among the items of property covered by the policy, under paragraph 1C was: “Improvements and Betterments, meaning the Insured’s use interest in fixtures, alterations, installations or additions comprising a part of the described building(s) occupied but not owned by the Insured and made or acquired at the expense of the Insured exclusive of rent paid by the Insured, but which are not legally subject to removal by the Insured.” With respect to lost rents, the agreement provided that the company would be liable for: “The actual loss sustained by the Insured resulting directly from necessary untenantability, but not exceeding the reduction in rents less charges and expenses which do not necessarily continue during the period of untenantability for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property herein described as has been damaged or destroyed, commencing with the date of such damage or destruction and not limited by the date of expiration of this policy”. Also included in the policy was the standard provision mandated by section 168 of the Insurance Law: “Con
 
 *413
 
 cealment, fraud. This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.”
 

 On July 14, 1975 the medical center opened; by the time a major fire occurred at the facility two weeks later on July 28 Jonari had sublet 17 units to medical and related professionals. Four of the arrangements were by written leases at a fixed rent; 13 were by oral agreement under which the tenants agreed to pay rent of a stated percentage of their gross receipts, the prospect being that after a three-to six-month probationary period written leases on the same terms would be executed. One of the tenants with a written lease was the professional corporation M & S, which had theretofore taken out an equipment floater policy with St. Paul at its previous location.
 

 After the fire on July 28, which made the premises untenantable without substantial restoration and repair, Jonari filed a claim under its policy with St. Paul for personal property loss in the amount of $108,613.27, including improvements and betterments of $36,133.02, and for lost rents of $32,000. In connection with that claim, two documents were submitted to St. Paul as expressing the lease arrangement entered into between Jonari and O’Brien on March 24, 1975. Both bore the date last mentioned and were otherwise identical except that the second lease tendered to the insurer included a clause not appearing in the other. That clause — clause 45 — provided: “Notwithstanding any other provisions to the contrary, it is understood and agreed between the parties, that upon completion of landlord’s work on Exhibit A, to be performed for tenant’s exclusive benefit and interest, tenant shall in the event the demised premises are damaged by fire or other cause, repair and rebuild the same to the extent of the available insurance proceeds for this work, within 60 days or have the right to cancel this lease without any further obligations.” This clause was heavily relied on by Jonari as support for its claim that it had an insurable interest in the improvements and betterments at
 
 *414
 
 the medical center and its request for payment for such items under its policy with St. Paul. In examinations under oath of Drs. Mittleman and Zuckerman conducted by the insurer pursuant to a provision of the policy each was questioned with respect to the time of execution of the lease that contained clause 45. While Dr. Mittleman stated that he did not know when the clause was put in the lease form, Dr. Zuckerman stated that he knew it was before the fire.
 

 After St. Paul rejected Jonari’s claim in full, the present action was instituted in which the claim was reasserted, with the item of lost rent being increased to $96,000 (the full amount of policy coverage for that item), it being Jonari’s position that that item had continued to escalate during consideration of its claim by St. Paul. In addition to other defenses not now relevant, the insurer asserted that it was relieved of liability under the policy by reason of the insured’s production of a fraudulent lease and its misrepresentation as to the time of inclusion of clause 45 for the purpose of imposing liability on the insurer where none existed.
 

 At the trial of the action, at which Mr. O’Brien testified that the lease containing the clause on which Jonari’s claim for improvements and betterments was in significant part based had not been executed until after the fire had occurred, Jonari’s counsel conceded that that was the fact. To establish the circumstances of the second lease’s execution, testimony was produced that, after the insurer’s adjuster had raised a question with Jonari’s adjuster as to whether the improvements and betterments were covered under Jonari’s policy (in light of the fact that their cost was being paid back to O’Brien in the form of rent), O’Brien and Jonari executed the second instrument, prepared by O’Brien’s attorney, more clearly to manifest what had been the intention of the parties from the outset with respect to improvements and betterments. As Jonari’s adjuster described it, what was inserted in the record lease was “an additional paragraph in clarification of the leasehold improvements”.
 

 When the case was submitted to the jury two questions were posed: “1. Did the plaintiff wilfully and fraudulently
 
 *415
 
 place in the proof of loss a statement of property it did not possess or did it place a false and fraudulent value upon the property?” “2. Did the plaintiff materially alter the lease agreement with an intent to defraud the defendant and collect under the provisions of this policy?” The jury answered both questions in the negative and returned a verdict for plaintiff for personal property loss other than improvements and betterments in the amount of $51,856.25 and for loss of rents in the amount of $96,000. Nothing was awarded for improvements and betterments. The judgment entered was affirmed by the Appellate Division (87 AD2d 540). On defendant’s appeal we modify the order of the court below and remit the case for a new trial on the issue of damages for loss of rent alone.
 

 St. Paul repeats its argument of fraudulent conduct on the part of Jonari in its submission of the second lease executed by it and its landlord O’Brien, containing clause 45. In light of the jury’s rejection of that argument, affirmed by the Appellate Division, we are without power to reverse that result unless we are to say as a matter of law that on the proof before it the jury was required to accept the conclusion the insurer would draw from the insured’s actions. This we cannot do on the record before us, which distinguishes the present case from
 
 Sunbright Fashions v Greater N. Y. Mut. Ins. Co.
 
 (34 AD2d 235, affd 28 NY2d 563), relied on by the insurer and the dissenting Justice at the Appellate Division. In
 
 Sunbright
 
 it was admitted that an elaborate story of delivery, return and redelivery of insured goods intended to place them at the scene of a theft, as well as the spurious documents in verification, was a fabrication. The president of the insured in that case never denied that he knew both that the papers were false and that the narrative was completely without basis in fact. In contrast, the testimony given in the present case by both parties to the primary lease was consistently to the effect that the second version of the lease executed by them accurately reflected the agreement arrived at by them but imperfectly manifested in the first document. While the jury might well have chosen not to believe that evidence and thereby have concluded that a fraud had been perpetrated on the insurer, it found the witnesses credible and
 
 *416
 
 rejected all argument that a fraud had been perpetrated. Similarly, although a contrary finding would not have lacked evidentiary support, the jury did not exceed its power in determining that misstatements by Dr. Zuckerman with respect to when the second lease was executed in relation to the July 28 fire did not demonstrate that a fraud was being practiced on the insurer. Indeed, having found that there had been no material alteration of the lease with intent to defraud, the jury may have concluded that execution of the second agreement was an event of such little significance that the doctor’s error in recollection of the date was unexceptional.
 

 Nor is there merit to the suggestion made by the insurer that the fact the jury gave the insured no award for improvements and betterments establishes a finding by it of fraud and misrepresentation on the part of the insured which invalidates the policy in its entirety. In addition to the issue of fraud, the jury also had submitted to it the conflicting claims by the parties as to whether the policy provision excluding coverage for improvements and betterments repaid by inclusion in rent was controlling and whether Jonari had sufficient rights to have an insurable interest. The denial of an award to the insured for internal construction could have resulted from a resolution of either of these questions in the insurer’s favor, quite apart from any misconduct on the part of the insured.
 

 St. Paul makes a novel argument that no fraud or intent to defraud was necessary in this case to work an invalidation of the policy under the “Concealment, fraud” provision of the insurance agreement and that proof of misrepresentation alone was sufficient. Thus, it assigns as error, to which objection was taken, the inclusion by the trial court in the questions submitted to the jury of the words “fraudulently” and “with an intent to defraud”. No relevant authority is cited for the proposition urged. Conceivably, misrepresentation by an insured, unattended by an intent to defraud, might be given significant effect in determining the validity of a policy of insurance if the misrepresentation preceded the issuance of the policy. In that instance a misstatement of a relevant fact, intentional though of innocent purpose as regards the insurer, might lead the
 
 *417
 
 insurer to accept a risk it would not have undertaken with full knowledge of the true facts, and the resolution of the rights of the parties in the event of a loss might be determined by the materiality of the misrepresentation
 
 (Sebring v Fidelity-Phenix Fire Ins. Co. of N. Y.,
 
 255 NY 382; see 9 Couch, Cyclopedia of Insurance Law [2d ed], § 38:27).
 

 When misrepresentation goes to proof of loss however, the cases uniformly speak of fraud, fraudulent, and intent to defraud when considering claims of invalidity under the “Concealment, fraud” provision mandated by section 168 of the Insurance Law (e.g.,
 
 Saks & Co. v Continental Ins. Co.,
 
 23 NY2d 161;
 
 Happy Hank Auction Co. v American Eagle Fire Ins. Co.,
 
 1 NY2d 534;
 
 Sunbright Fashions v Greater N. Y. Mut. Ins. Co.,
 
 34 AD2d 235, affd 28 NY2d 563,
 
 supra).
 
 Indeed, intent to deceive appears to be equated with intent to defraud in the case of claims asserted against an insurer: “[O]ne of the elements involved in the determination of whether an insured has forfeited his rights under an insurance policy because of fraud or false swearing as to his proof of loss is the intent of the insured; that is, whether the false statement with respect to a material matter was made wilfully and with the intention of thereby deceiving the insurer” (13A Couch, Cyclopedia of Insurance Law [2d rev ed], § 49A:66). Were intent to defraud not a necessary element, the discussion in
 
 Sunbright
 
 of the conclusive evidence of such intent would have been irrelevant, the making of false statements and production of spurious documents having been admitted.
 

 With respect to the charge, St. Paul asserts that the trial court erred in declining a requested charge that if the jury found that Dr. Mittleman, acting for Jonari, filed duplicate claims for the same equipment under the policies issued by St. Paul to Jonari and to M & S professional corporation, then the jury should find that Jonari concealed and misrepresented material facts and it should return a verdict for the insurer. There was no error in the court’s refusal so to charge on the evidence in this case. In light of the confusion which frequently exists with respect to which of multiple policies covers a loss and in view of time requirements for prompt filing of claims, it is not uncommon for an
 
 *418
 
 insured to pursue more than one avenue immediately after the loss occxirs, without thereby intending or being chargeable with an intent to defraud any insurer. That no such intent existed here was implicit in the fact that the two claims were filed with the same broker, by whom they were forwarded to the insurer within a four-day period. Certainly no charge was warranted that the fact of the duplicate filing, if found, should result in a verdict for the insurer.
 

 For the reasons stated, there should be no disturbance of the jury’s finding that Jonari is entitled to recover on the policy issued by St. Paul. Because it appears however that the amount awarded for lost rent is not supported by the proof and is therefore speculative only, a new trial is required for the computation of damages recoverable for that item of loss.
 

 The policy coverage for lost rents extended to actual loss, not exceeding reduction in rents less noncontinuing charges and expenses during the period of untenantability, for such time as would be required “with the exercise of due diligence and dispatch” to restore the damaged property. The only testimony relating to the time period required in this case for restoration was that of a builder called by Jonari who estimated that approximately four months would be the time necessary to restore the interior improvements and betterments. Another witness testified that only 30 to 60.days would be necessary to secure replacement equipment. No evidence was produced with respect to time required for work on the building itself to permit interior completion. The estimate' of lost rents prepared by Jonari’s appraiser used a four-month untenantability period and, based on extrapolations from the rents provided in the written and oral leases in effect on the day of the fire (most of which were percentage leases of tenants who had had only two weeks’ experience in the premises) fixed the total loss at $35,681.92. On such a record, the jury’s award of $96,000 — the full coverage provided by the policy — cannot stand.
 

 We reject as without reason or precedent Jonari’s attempt to support the award by a contention that “the time period based upon the application of ‘due diligence and
 
 *419
 
 dispatch’ never stopped running” during the period when the insurer resisted payment of the insured’s claim under the policy. Its plea for what it terms a “subjective” standard — expandable as an insurer delays payment under a policy — even if there were authority for its application ip other circumstances, must of necessity fail in the present instance in which the jury’s refusal to have awarded any recovery by Jonari on its claim of $36,133.02 for improvements and betterments and its reduction of the remaining property claim byr $20,000 demonstrates the propriety of the insurer’s resistance of the insured’s demands under the policy.
 

 On retrial Jonari will be required to establish its actual rent loss, in the form of reduction of rents together with noncontinuing charges and expenses to be deducted therefrom, for the period defined by the insurance agreement.
 

 For the reasons stated, the order of the Appellate Division should be modified, without costs, to the extent of remitting the case to Supreme Court for a new trial as to amount of damages the insured is entitled to recover for loss of rent, and as so modified, affirmed.
 

 Chief Judge Cooke and Judges Jasen, Wachtler, Fuchsberg, Meyer and Simons concur.
 

 Order modified, without costs, and case remitted to Supreme Court, New York County, for a new trial in accordance with the opinion herein and, as so modified, affirmed.