**CITY OF JOHNSTOWN, NEW YORK,**
**Plaintiff–Appellant,**

**v.**

**BANKERS STANDARD INSURANCE COMPANY, Pacific Employers Insurance Company, Defendants–Appellees.**

**No. 930, Docket 88–9051.**

United States Court of Appeals,
Second Circuit.

Argued March 28, 1989.

Decided June 22, 1989.

James B. Tuttle, (Dreyer, Kinsella, Boyajian & Tuttle, Albany, N.Y., of counsel), for plaintiff-appellant.

Paul R. Koepff, (Kathleen A. Gallagher, Mudge Rose Guthrie Alexander & Ferdon, New York City, of counsel), for defendants-appellees.

Thomas W. Brunner, James M. Johnstone, and John W. Cavilia, (Wiley, Rein & Fielding, Washington, D.C., of counsel), for amicus curiae Ins. Environmental Litigation Ass'n.

Before FEINBERG and PIERCE, Circuit Judges, and MOTLEY, District Judge.*

---

* Hon. Constance Baker Motley, District Judge, United States District Court for the Southern District of New York, sitting by designation.

PIERCE, Circuit Judge:

The City of Johnstown, New York (the "City") appeals from an order of the United States District Court for the Northern District of New York (Cholakis, *Judge*), granting summary judgment to appellees Bankers Standard Insurance Company and Pacific Employers Insurance Company. The City was originally sued by the State of New York in the federal district court under (1) the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") (codified as amended in scattered sections of 26, 33, 42 & 49 U.S.C.), and (2) the state law of public nuisance and restitution, for the costs of studying and cleaning up certain wastes that are allegedly seeping from a City landfill into surrounding groundwaters. The City gave notice of the suit to appellees, their insurers. Appellees claimed that the City's comprehensive general liability policies did not cover any such liability, whereupon the City brought this action in the federal district court, seeking a declaration that the insurers should defend and indemnify the City in the suit brought by the State. The insurers successfully moved for summary judgment based on the argument that, because the City had notice of the contamination, the pollution damages alleged in the State's complaint against the City were not covered by the City's insurance policies. On appeal, the City challenges the district court's grant of summary judgment. We reverse the grant of summary judgment.

## BACKGROUND

For purposes of our review, the basic facts are undisputed. Since 1947, the City of Johnstown, Fulton County, New York has owned and operated a landfill. The landfill now receives only general household refuse, but until 1979 the landfill also received various industrial wastes, and from 1973–1979 sewage sludge was dumped at the site. Over the last fifteen years, evidence has emerged that indicates that certain wastes leaking from the dump may have polluted the surrounding groundwaters. As a result, in June 1987, the State of New York brought an action in the federal district court against the City and various generators and a transporter of wastes (the "CERCLA action"). The complaint in that action charged that each defendant was jointly and severally strictly liable for the costs of studying and remedying the environmental problems created by the landfill. *See State of New York v. City of Johnstown, et al.*, No. 87–CV–636 (N.D.N.Y. filed June 5, 1987).

The City gave due notice of the CERCLA action to its insurers, including appellees. According to the district court, Bankers Standard Insurance Company had issued a comprehensive liability insurance policy to the City for the period from April 1, 1983 to April 1, 1984, and Pacific Employers Insurance Company had issued a similar policy for the period from April 1, 1984 to December 31, 1985. In addition, Pacific Employers had provided the City with excess liability coverage for at least part of that 33–month period.

The insurance companies disclaimed coverage, arguing that the potential liability at issue fell within various exclusions in the City's policies. The insurers therefore disavowed any obligation either to defend the City in the lawsuit, or to indemnify the City should there ultimately be a judgment entered against the City. The City thereafter brought this diversity action in the district court, seeking a declaration that the insurers must defend and indemnify the City in the underlying CERCLA action.

In lieu of answering, the insurers moved to dismiss or, in the alternative, for summary judgment. The insurers' oral argument on the motion was based on two different, but not unrelated, grounds. First, the insurance companies pointed out that the policies specifically excluded losses or damages "expected" or "intended" by the City. The insurers argued that, in light of the earlier warnings of contamination, the alleged environmental damage that underlay the CERCLA suit was certainly expected by the City, and thus was not covered by the insurers' policies. Second, they argued that the City knew of the contamination *before* the inception of the relevant

policies, and that therefore the contamination was a "known risk," and that thus the policies did not cover any liability resulting from that contamination. In their memorandum in support of the motion, however, the insurers essentially conflated the two arguments, asserting that because the pollution damage alleged in the CERCLA complaint was a "known risk," it was "expected" by the City and therefore was not covered under the City's policies with appellees.

At the conclusion of argument held on November 4, 1988, Judge Cholakis granted the insurers' motion for summary judgment. The district court ruled, in pertinent part, as follows:

> There has been material produced before this Court which would indicate that the City of Johnstown was aware of conditions from which it could expect the release and subsequent damage alleged in the CERCLA complaint.
>
> The [City] has not come forward with anything to rebut the information submitted to the Court by the [insurers].
>
> In this Court's judgment there has been an affirmative showing that the allegations contained within the CERCLA complaint occurred in such a fashion that the occurrences listed in the policy did not occur or the occurrences defined in the policy did not occur within the policy term of either the Bankers Standard Insurance Company or the Pacific Employers Insurance Company.
>
> Therefore, the [insurers'] motion ... is granted.

It is difficult to determine from the transcript of that hearing which of the two arguments proffered by the insurers was relied upon by the district court. On appeal the insurers press their "known risk" argument and urge that the district court's decision was not based upon the "expect" or "intend" language of exclusion in the City's policies. However, as was earlier noted, in their submissions on the summary judgment motion the insurers conflated the two arguments. Thus, the district court's opinion could have been based upon either the "known risk" theory or the "expect"/"in-

tend" language in the relevant policies. As the discussion below reveals, however, summary judgment was improper on either ground.

## DISCUSSION

The City's complaint herein sought a declaration from the district court requiring the insurers to both defend and indemnify the City in the underlying CERCLA action. Under New York law, the duty to defend and the duty to indemnify are separate and distinct. *E.g., Niagara County v. Utica Mut. Ins. Co.,* 80 A.D.2d 415, 420, 439 N.Y.S.2d 538, 541 (4th Dep't), *app. dismissed,* 54 N.Y.2d 608, 427 N.E.2d 1191, 443 N.Y.S.2d 1030 (1981); *see International Paper Co. v. Continental Casualty Co.,* 35 N.Y.2d 322, 326, 320 N.E.2d 619, 621, 361 N.Y.S.2d 873, 876 (1974) (insurer's obligation to furnish insured with a defense is heavy, and broader than its duty to pay); *Technicon Elecs. Corp. v. American Home Assurance Co.,* 141 A.D.2d 124, 130, 533 N.Y.S.2d 91, 95 (2d Dep't 1988). At this stage, we need only address the issue of the duty to defend. The insurer's duty to defend works, in essence, as a form of "litigation insurance" for the insured. *See Servidone Constr. Corp. v. Security Ins. Co.,* 64 N.Y.2d 419, 423–24, 477 N.E.2d 441, 444, 488 N.Y.S.2d 139, 142 (1985). The duty to defend is triggered "whenever the allegations in the complaint fall within the risk covered by the policy"; thus, "[i]f, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured." *Ruder & Finn, Inc. v. Seaboard Sur. Co.,* 52 N.Y.2d 663, 669–70, 422 N.E.2d 518, 521, 439 N.Y.S.2d 858, 861 (1981).

The district court properly held that the CERCLA complaint "does allege claims which would come within the meaning of the policy or policies issued by the defendants to the City of Johnstown," and that therefore the insurers' duty to defend was implicated by the underlying CERCLA action. The question is whether the insurers met their burden of showing that they were relieved of that duty by virtue of the terms of the policies.

New York courts have consistently held that, as noted, an insurer seeking to avoid its duty to defend bears a heavy burden. That burden, in practice, is seldom met. *See Technicon Elecs.,* 141 A.D.2d at 144, 533 N.Y.S.2d at 104. "Indeed, before an insurance company is permitted to avoid policy coverage, it must ... establish[ ] that the exclusions or exemptions [claimed] apply in the particular case, and that they are subject to no other reasonable interpretation." *Seaboard Sur. Co. v. Gillette Co.,* 64 N.Y.2d 304, 311, 476 N.E.2d 272, 275, 486 N.Y.S.2d 873, 876 (1984) (citations omitted). To avoid the duty to defend, the insurer must show that the allegations in the underlying complaint are "solely and entirely" within the policy's exclusions from coverage. *International Paper,* 35 N.Y.2d at 325, 320 N.E.2d at 621, 361 N.Y. S.2d at 875. A court applying New York law, then, should only excuse an insurer from its duty to defend if it can be concluded as a matter of law that there is no possible factual or legal basis on which the insurer might eventually be held to indemnify the insured. *E.g., Villa Charlotte Bronte, Inc. v. Commercial Union Ins. Co.,* 64 N.Y.2d 846, 848, 476 N.E.2d 640, 641, 487 N.Y.S.2d 314, 315 (1985); *Spoor–Lasher Co. v. Aetna Casualty & Sur. Co.,* 39 N.Y.2d 875, 876, 352 N.E.2d 139, 140, 386 N.Y.S.2d 221, 222 (1976); *see also Abex Corp. v. Maryland Casualty Co.,* 790 F.2d 119, 129 & n. 44 (D.C.Cir.1986) (citing cases).

For the reasons stated below, we hold that the insurers did not meet their burden of showing that they had no duty to defend the City in the CERCLA action. This is so whether that duty is measured against the underlying CERCLA complaint alone, *see, e.g., Zurich–American Ins. Cos. v. Atlantic Mut. Ins. Cos.,* 139 A.D.2d 379, 385, 531 N.Y.S.2d 911, 915 (1st Dep't 1988), *aff'd,* 74 N.Y.2d 621, 541 N.Y.S.2d 970, 539 N.E.2d 1098 (1989); *see also Lee v. Aetna Casualty & Sur. Co.,* 178 F.2d 750, 751 (2d Cir. 1949) (L. Hand, *J.*), or against the record as a whole, *see, e.g., Munzer v. St. Paul Fire & Marine Ins. Co.,* 145 A.D.2d 193, 195–96, 538 N.Y.S.2d 633, 636–37 (3d Dep't 1989).

## I. Damages "Expected" or "Intended" by the Insured

■ Appellees' urged in support of their motion for summary judgment that the City's insurance policies did not extend coverage to risks that were "expected" or "intended" by the insured. The City's policies with Bankers Standard and Pacific Employers stated that the insurers would defend and indemnify the City only if the liability at issue arose out of an "occurrence," as defined by the policies. Each policy defined "occurrence" in substantially the same way, as follows:

> An accident, including continuous or repeated exposure to the same event, that results, during the policy period, in loss or damage to your property or in bodily injury, personal injury, or property damage. Such injury or damage must be neither expected nor intended by the insured.

*E.g.,* App. at 64. On their motion for summary judgment, appellees argued that because the City had notice that the landfill was believed to be leaking into the surrounding groundwaters, the pollution damages that underlay the subsequent CERCLA action were neither unexpected nor unintended by the City. Thus, argued the insurers, they had no duty to defend or indemnify the City in the CERCLA action.

The provision in these policies that excludes damages or injuries expected or intended by the insured from coverage is one that has commonly appeared in comprehensive general liability policies since 1966. *See* Chesler, Rodburg & Smith, *Patterns of Judicial Interpretation of Insurance Coverage for Hazardous Waste Site Liability,* 9 Rutgers L.J. 9, 15–16 (1986); Note, *The Pollution Exclusion in the Comprehensive General Liability Insurance Policy,* 1986 U.Ill.L.Rev. 897, 903–04; Annotation, *Construction and Application of Provision of Liability Insurance Policy Expressly Excluding Injuries Intended or Expected by Insured,* 31 A.L.R.4th 957, 971–72 (1984). The New York courts have tended to read the "expect or intend" provision fairly narrowly. *See, e.g., Continental Ins. Co. v. Colangione,* 107 A.D.2d 978,

979, 484 N.Y.S.2d 929, 930–31 (3d Dep't 1985) (jury instruction that merely restated policy's "expect" or "intend" language was too broad). It is apparent that to do otherwise, and to exclude all losses or damages which might in some way have been *expected* by the insured, could expand the field of exclusion until virtually no recovery could be had on insurance. This is so since it is mishaps that are "expected"—taken in its broadest sense—that are insured against.

The New York courts have generally read "expect or intend" provisions to exclude only those losses or damages that are not accidental. *See Barry v. Romanosky,* 147 A.D.2d 605, 538 N.Y.S.2d 14, 16 (2d Dep't 1989); *Technicon Elecs.,* 141 A.D.2d at 134, 533 N.Y.S.2d at 97 (" '[A]ccidental' is, generally speaking, the opposite of 'intentional' or 'expected.' "); *see also Miller v. Continental Ins. Co.,* 40 N.Y.2d 675, 678, 358 N.E.2d 258, 260, 389 N.Y.S.2d 565, 567 (1976); Chesler, Rodburg & Smith, *supra,* at 32. The problem is one of defining "accidental." Although there is no simple or all-encompassing definition of "accidental," *see McGroarty v. Great Am. Ins. Co.,* 36 N.Y.2d 358, 365, 329 N.E.2d 172, 176, 368 N.Y.S.2d 485, 490 (1975), it is possible to identify a few central principles in the New York courts' treatment of the term.

In attempting to define what events are "accidental," the New York courts have focused on the nexus between an intentional act and the resulting damage. As this court has observed, the distinction is drawn between

> "damages which flow directly and immediately from an intended act, thereby precluding coverage, and damages which accidentally arise out of a chain of unintended though expected or foreseeable events that occurred after an intentional act. Ordinary negligence does not constitute an intention to cause damage; neither does a calculated risk amount to an expectation of damage...."

*Brooklyn Law School v. Aetna Casualty & Sur. Co.,* 849 F.2d 788, 789 (2d Cir.1988) (quoting *Continental Ins. Co. v. Colangione,* 107 A.D.2d at 979, 484 N.Y.S.2d at 930–31 (citations omitted)). Thus, though

an *intentional* act may ultimately cause certain damages, those damages may, under New York law, be considered "accidental" if the "total situation could be found to constitute an accident." *McGroarty,* 36 N.Y.2d at 365, 329 N.E.2d at 175, 368 N.Y.S.2d at 490; *see Messersmith v. American Fidelity Co.,* 232 N.Y. 161, 166, 133 N.E. 432, 433 (1921) (Cardozo, *J.*) (courts must review the "transaction as a whole"). Since it is therefore "not legally impossible to find accidental results flowing from intentional causes," *McGroarty,* 36 N.Y.2d at 364, 329 N.E.2d at 175, 368 N.Y.S.2d at 490, "[t]heoretically, a discharge of toxic waste could take place accidentally over an extended period of time," *Technicon Elecs.,* 141 A.D.2d at 134, 533 N.Y.S.2d at 97.

In general, what make injuries or damages expected or intended rather than accidental are the knowledge and intent of the insured. *See Munzer,* 145 A.D.2d at 195, 538 N.Y.S.2d at 636. It is not enough that an insured was warned that damages might ensue from its actions, or that, once warned, an insured decided to take a calculated risk and proceed as before. *See McGroarty,* 36 N.Y.2d at 363–64, 329 N.E.2d at 175, 368 N.Y.S.2d at 489–90; *Willets Point Contracting Corp. v. Hartford Ins. Group,* 75 A.D.2d 254, 258, 429 N.Y.S.2d 230, 232 (2d Dep't 1980), *aff'd,* 53 N.Y.2d 879, 423 N.E.2d 42, 440 N.Y.S.2d 619 (1981). Recovery will be barred only if the insured intended the damages, *see, e.g., McGroarty,* 36 N.Y.2d at 363–65, 329 N.E.2d at 175, 368 N.Y.S.2d at 489–90, or if it can be said that the damages were, in a broader sense, "intended" by the insured because the insured knew that the damages would flow directly and immediately from its intentional act, *see Mary & Alice Ford Nursing Home Co. v. Fireman's Ins. Co.,* 86 A.D.2d 736, 737–38, 446 N.Y.S.2d 599, 601 (3d Dep't), *aff'd,* 57 N.Y.2d 656, 439 N.E.2d 883, 454 N.Y.S.2d 74 (1982); *see also Continental Ins. Co. v. Colangione,* 107 A.D.2d at 979, 484 N.Y.S.2d at 930–31 (to deny coverage, "the fact finder must find that the insured intended to cause damage"); *Atlantic Cement Co. v. Fidelity & Casualty Co.,* 91 A.D.2d 412, 417–18,

459 N.Y.S.2d 425, 428–29 (1st Dep't 1983), *aff'd,* 63 N.Y.2d 798, 471 N.E.2d 142, 481 N.Y.S.2d 329 (1984). In those instances, coverage is precluded because the damages are not "accidental." *See General Accident Ins. Co. v. Manchester,* 116 A.D.2d 790, 792, 497 N.Y.S.2d 180, 182 (3d Dep't 1986); *see also Aetna Casualty & Sur. Co. v. General Time Corp.,* 704 F.2d 80, 82 (2d Cir.1983); Chesler, Rodburg & Smith, *supra,* at 20–21 (recovery is barred if the damages were intentional or "constructively intentional").[1]

Applying these principles of New York law to the facts of this case, it is apparent that the insurers, at least at this stage of this litigation, have failed to show that the extensive environmental damages alleged in the underlying CERCLA action were not accidental.

The complaint in the CERCLA action alleges that the City, during the forty-odd years it operated the landfill, allowed others to dump hazardous wastes therein. Although the State's complaint charges that the City was negligent in its operation of the dump, nowhere does the complaint allege that the City intended the environmental damages charged in the complaint, or that the City knew that those damages would flow directly and immediately from its intentional acts.

Nor did the documents relied upon by appellees on their motion for summary judgment demonstrate that the damages alleged in the CERCLA complaint were "expected" or "intended" by the City. Although appellees originally submitted a mass of documents in support of their motion, because the City objected to the admissibility and probative value of many of those documents, the insurers made clear in oral argument before the district court that their motion rested on three key, "uncontested" documents. Of those three, the earliest was a November 29, 1977 letter and accompanying report from the United States Environmental Protection Agency. In its report, the Agency noted that the sewage sludge that was being dumped at the landfill posed a "potential environmental hazard." The Agency reported that some groundwater contamination had been found, but that there had "been no reported health problems or accidents related to the disposal of wastewater treatment sludge at this site."

The second document, an April 10, 1978 letter and report from the New York Department of Environmental Conservation, warned the City of the environmental hazard. However, this second document was nevertheless insufficient to show for summary judgment purposes that, as a matter of law, the City "expected" or "intended" the damages alleged in the CERCLA action. The letter warned the City that apparently "the landfill ha[d] impacted the groundwaters near the landfill," and the accompanying report, though noting that

---

1. In a decision rendered subsequent to oral argument in this case, *County of Broome v. Aetna Casualty & Surety Co.,* 146 A.D.2d 337, 540 N.Y.S.2d 620 (3d Dep't 1989), New York's Appellate Division, Third Department held that "property damages are expected if the actor knew or should have known there was a substantial probability that a certain result would take place." *Id.* at 341, 540 N.Y.S.2d 620. Appellees interpret this holding to mean that there was no "occurrence" covered by the policies herein, because (in their view) the pollution damage was more than "substantially probable" even before the inception of appellees' policies with the City. The City, on the other hand, argues that *County of Broome* is at odds with established New York precedent.

If the Third Department's interpretation of the "expect or intend" exclusion does indeed broaden that exclusion to cover any damage that was, objectively speaking, substantially probable, that interpretation appears to conflict with the New York cases discussed in the text, including *McGroarty* and its progeny. *See, e.g., Munzer v. St. Paul Fire & Marine Ins.,* 145 A.D.2d 193, 195–96, 538 N.Y.S.2d 633, 636–37 (3d Dep't 1989). To the extent that *County of Broome* does diverge from other New York courts' narrow interpretation of the "expect or intend" clause, that divergence may be due in part to the *County of Broome* court's almost exclusive reliance on precedent from other than New York courts. *See County of Broome,* 146 A.D.2d at 341–42, 540 N.Y.S.2d 620 (citing *Auto–Owners Ins. Co. v. Jensen,* 667 F.2d 714, 719–20 (8th Cir.1981) (applying Minnesota law); *American Motorists Ins. Co. v. General Host Corp.,* 667 F.Supp. 1423 (D.Kan.1987) (interpreting pollution exclusion clause, with no clear choice of law); *American Mut. Liab. Ins. Co. v. Neville Chem. Co.,* 650 F.Supp. 929 (W.D.Pa.1987) (apparently applying Pennsylvania law)).

its results were "not conclusive," said that the landfill was the "most probabl[e]" source of groundwater contamination. The report did not urge that the landfill be closed. Instead, the Department recommended that additional studies should be conducted and certain remedial steps should be taken to slow the spread of pollutants.

The third piece of evidence relied upon by appellees was of very little probative value. The appellees offered a copy of a 1981 newspaper article, which described a suit brought against the City by a family whose well had reportedly been contaminated by the landfill. The record indicates, however, that the suit was settled by the City before any finding of liability was made.

For purposes of a summary judgment motion, these three documents, whether taken singly or together, were not sufficient to show that the substantial environmental damage and resulting costs alleged in the CERCLA complaint were not accidental, i.e., that they were "expected" or "intended" by the City. The evidence demonstrated that the City was warned that the landfill apparently was contaminating the local groundwaters. As we have noted, however, proof of warnings of possible physical damages is not enough to show that as a matter of law the damages ultimately incurred were expected or intended.

In opting to keep the landfill in operation, the City took a calculated risk, much as the insured did in *McGroarty v. Great American Insurance Company*. In *McGroarty*, the insured's construction work had caused a great weight of rocks and water to shift against a neighboring property owner's garage wall. The irate property owner had complained to the insured, and had even pointed out cracks developing in the garage wall. The New York Court of Appeals, however, held that, despite these warnings, the damages that subsequently occurred still could be found to have been accidental. *McGroarty*, 36 N.Y.2d at 361–64, 329 N.E.2d at 174–75, 368 N.Y.S.2d at 487–90.

Here, by analogy, the record suggests that the City was aware of potential contamination, but not that the City *intended* the resulting damage, nor that the City, intending harm, *knew* that the extensive damages alleged in the CERCLA complaint would flow directly and immediately from the City's intentional acts. The evidence relied upon on appellees' motion for summary judgment thus failed to show that "as a matter of law that there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify" the insured. *E.g., Spoor–Lasher*, 39 N.Y.2d at 876, 352 N.E. 2d at 140, 386 N.Y.S.2d at 222. On our review of the record, then, we conclude that summary judgment on the duty of defense was improperly granted insofar as it was based upon appellees' argument that the damages were expected or intended, because the insurers did not show that they were entitled to judgment as a matter of law. *See Burtnieks v. New York*, 716 F.2d 982, 985 (2d Cir.1983); Fed.R.Civ.P. 56(c).

## II. *The "Known Risk" Argument*

■ On appeal, the insurers and amicus curiae argue that the district court's decision was based upon a "known risk" doctrine in insurance law. They point out that insurance covers risks, not certainties; thus, they argue, if the City had notice of the contamination before the inception of the policies, the contamination was a "known risk," and there was no coverage for liability arising from that contamination.

Appellees have not cited any New York case discussing the doctrine of "known risk," nor have we, in our review of New York law, been able to discern such a doctrine. We do not agree that the cases offered by appellees stand for the proposition that knowledge of a risk makes that risk uninsurable. As we perceive it, some of the cases cited stand for the principle that insurance cannot be purchased for damage deliberately done before the inception of insurance, *see Bartholomew v. Appalachian Ins. Co.*, 655 F.2d 27, 28–29 (1st Cir.1981), or for damage that has been fraudulently concealed from the insurer

prior to the purchase of the insurance policy, *see Arley v. United Pac. Ins. Co.*, 379 F.2d 183, 187–88 (9th Cir.1967), *cert. denied*, 390 U.S. 950, 88 S.Ct. 1039, 19 L.Ed. 2d 1140 (1968). Other cases cited stand for the proposition—inapposite here—that property cannot be insured if it is rapidly being destroyed, *e.g.*, as in a flood, *see, e.g., Mason Drug Co. v. Harris*, 597 F.2d 886, 887–88 (5th Cir.1979), or for the proposition that insurance will not normally cover damages that are, as a result of legal or administrative proceedings, already apparent at the inception of insurance, *see, e.g., Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 62–63 (3d Cir.1982); *Township of Gloucester v. Maryland Casualty Co.*, 668 F.Supp. 394, 402 & n. 2 (D.N.J.1987); *United States v. Conservation Chem. Co.*, 653 F.Supp. 152, 181 (W.D.Mo.1986). Finally, other cases cited deal with the doctrine regarding damages that are "expected" or "intended" by the insured, *see, e.g., New Castle County v. Hartford Accid. & Indem. Co.*, 685 F.Supp. 1321, 1329–30 (D.Del.1988), a topic that was more fully discussed above.

We recognize that, as a basic rule, recovery cannot be had on property that the insured knew was already destroyed at the inception of insurance. *See Hanover Fire Ins. Co. v. Morse Dry Dock & Repair Co.*, 152 Misc. 111, 116, 272 N.Y.S. 792, 799–800 (Sup.Ct.N.Y. County 1934), *aff'd*, 244 A.D. 780, 280 N.Y.S. 795 (1st Dep't 1935), *aff'd*, 270 N.Y. 86, 200 N.E. 589 (1936). We also recognize that, as a basic rule, recovery is similarly barred if the insured fraudulently concealed from or misrepresented a material fact to the insured at the time the policy was issued, and that this would include situations where the insured concealed that the damages for which recovery is sought had occurred prior to the inception of the policy. *Cf. Jonari Management Corp. v. St. Paul Fire & Marine Ins. Co.*, 58 N.Y. 2d 408, 416–17, 448 N.E.2d 427, 431, 461 N.Y.S.2d 760, 764 (1983); N.Y.Ins.Law § 3105 (McKinney 1985).

However, the instant case is not one where any such fraudulent misrepresentation or concealment has been charged. On their motion for summary judgment, the insurers did not attempt to avoid coverage on the ground that the policies, by their own terms, were void because the City had fraudulently misrepresented or concealed a material fact at the inception of the contract of insurance. Instead, the insurers argued that the damages alleged in the CERCLA action were a "known risk," and that hence the City was entitled to no coverage. However, appellees have failed to cite support in New York law for this broader proposition that a risk, once "known," is uninsurable; nor have we found any such caselaw. In the absence of any support in New York law, we decline, in this diversity case, to announce a novel "known risk" doctrine in New York's insurance law. Our role as a federal court sitting in diversity is to construe and apply state law as we believe the state's highest court would, *e.g., Cunninghame v. Equitable Life Assurance Soc'y*, 652 F.2d 306, 308 (2d Cir.1981), not to adopt innovative theories that may distort established state law, *see United Parcel Serv., Inc. v. Weben Indus., Inc.*, 794 F.2d 1005, 1008 (5th Cir.1986); *see also De Cisneros v. Younger*, 871 F.2d 305, 309 (2d Cir.1989). We find no basis for concluding that the New York courts would embrace the "known risk" theory urged upon us by appellees. In our view, to do so might well swallow up the more narrow doctrines regarding (1) concealment and misrepresentation, and (2) damages that are "expected" or "intended" by the insured. To the extent, then, that the district court's grant of summary judgment rested on the "known risk" argument put forward by the appellees, we also reject that determination.

## CONCLUSION

We emphasize that this decision is limited to the insurers' duty of defense, and we make no determination as to whether the insurers may ultimately be required to indemnify the City; any such ruling at this point would be premature and must await the resolution of the underlying claims. *See In re Town of Huntington v. Hartford Ins. Group*, 69 A.D.2d 906, 907, 415 N.Y. S.2d 904, 905 (2d Dep't 1979) (citing *Spoor–*

*Lasher,* 39 N.Y.2d at 876, 352 N.E.2d at 140, 386 N.Y.S.2d at 222).

For the reasons stated above, the decision of the district court granting appellees summary judgment is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.