17-1636-cv
*Phila. Indem. Ins. Co. v. Cent. Terminal Restoration Co., et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of February, two thousand eighteen.

PRESENT:    JOHN M. WALKER, JR.,
            GERARD E. LYNCH,
            DENNY CHIN,
                    *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

PHILADELPHIA INDEMNITY INSURANCE CO.,
            *Plaintiff-Counter-Defendant-Appellant,*

            v.                                                17-1636-cv

CENTRAL TERMINAL RESTORATION CORP.,
WILLIAM SHEEHAN, MARCY A. SHEEHAN,
MICHAEL A. SERRANO,
            *Defendants-Counter-Claimants-Appellees,*

            and

THOMAS GILRAY, JR.,
            *Defendant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-COUNTER-
DEFENDANT-APPELLANT:

CHRISTOPHER T. BRADLEY, Marshall
Conway & Bradley, P.C., New York, New
York.

FOR DEFENDANT-COUNTER-
CLAIMANT-APPELLEE CENTRAL
TERMINAL RESTORATION
CORPORATION:

KENNETH W. AFRICANO (Patrick M.
Tomovic, on the brief), Harter Secrest &
Emery, LLP, Buffalo, New York.

FOR DEFENDANTS-COUNTER-
CLAIMANTS-APPELLEES WILLIAM
SHEEHAN AND MARCY A.
SHEEHAN:

R. CHARLES MINER, Smith Miner O'Shea
& Smith, LLP, Buffalo, New York.

FOR DEFENDANT-COUNTER-
CLAIMANT-APPELLEE MICHAEL
A. SERRANO:

JOSEPH A. MATTELIANO, Auguello &
Matteliano, LLP, Buffalo, New York.

Appeal from the United States District Court for the Western District of

New York (Telesca, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**

and the case is **REMANDED** solely with respect to the issue of attorneys' fees.

Plaintiff-counter-defendant-appellant Philadelphia Indemnity Insurance

Company ("PIIC") appeals from a May 8, 2017, judgment, entered pursuant to a

decision and order granting summary judgment in favor of defendants-counter-

claimants-appellees Central Terminal Restoration Corporation ("CTRC"), William and

Marcy A. Sheehan, and Michael A. Serrano holding that PIIC was obligated to defend

- 2 -

and indemnify CTRC under two insurance policies. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

## BACKGROUND

CTRC is a not-for-profit corporation located in Buffalo, New York. On April 1, 2013, CTRC held a Dyngus Day fundraising event, for which it obtained a temporary license to sell liquor.[1] At the fundraising event, CTRC allegedly served Thomas Gilray alcohol. Later that same evening, Gilray was driving while intoxicated and struck two pedestrians with his vehicle -- William Sheehan and Michael Serrano.[2] Both were seriously injured in the accident.

On November 14 and 19, 2013, respectively, the Sheehans and Serrano filed separate personal injury lawsuits against CTRC and others. The claims against CTRC were based on the Dram Shop statutes, N.Y. General Obligations Law § 11-101 and N.Y. Alcoholic Beverage Control Law § 65. The complaints alleged that, sometime in the seven hours prior to the accident, Gilray was served alcohol at CTRC's Dyngus Day fundraising event despite being visibly intoxicated.

In 2013, CTRC promptly notified its insurance carrier, PIIC, of the lawsuits, and PIIC began defending CTRC in both cases. At issue in this appeal is the

---

[1]     Dyngus Day is observed on the Monday after Easter, and is celebrated in particular by Polish-American communities.

[2]     The Court has been advised that William Sheehan died on January 10, 2018. As Mrs. Sheehan remains a party and Mr. Sheehan's interests are aligned with the interests of the remaining appellees, the Court is proceeding with the appeal. *See* Fed. R. App. P. 43(a)(1).

extent of PIIC's obligation to defend and indemnify CTRC for claims arising out of purported violations of the Dram Shop statutes.

Prior to the event, CTRC had purchased two insurance policies from PIIC, a primary policy (the "Primary Policy") and an excess policy (the "Excess Policy," and together the "Policies"). The Primary Policy contains two coverage parts: a commercial general liability ("CGL") part and a liquor liability part.

The CGL part provides coverage for any "bodily injury," resulting from an "occurrence," unless the bodily injury is "expected or intended from the standpoint of the insured." App. 169-70. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." App. 182. The CGL part provides $2 million in coverage for each occurrence, and $4 million in the aggregate.

The CGL part also contains a fundraising endorsement, for which CTRC paid a separate premium of $975 to cover the Dyngus Day event. The endorsement states that it "modifies" the CGL part, and specifically provides coverage for bodily injuries "arising out of" covered events. App. 209.

The second part of the Primary Policy is the liquor liability part for which CTRC paid a $1,000 premium. The liquor liability part provides $1 million in additional coverage for "injury" claims caused "by reason of the selling, serving or furnishing of any alcoholic beverage." App. 210.

- 4 -

The Excess Policy provides a separate layer of coverage in the amount of $1 million in addition to the coverage under the Primary Policy. As in the Primary Policy, the Excess Policy covers bodily injuries caused by an "occurrence," defined the same as above. App. 256.

On April 7, 2016, PIIC filed this diversity action in the district court seeking a determination that its obligation to defend and indemnify CTRC in the lawsuits existed only under the liquor liability part of the Primary Policy. PIIC argued that it had no obligation to defend or indemnify CTRC under the CGL part of the Primary Policy or under Excess Policy because those provisions cover "bodily injur[ies]" resulting from an "occurrence" -- meaning "an accident" -- and not those injuries that are "expected or intended from the standpoint of the insured." App. 170, 182.

PIIC specifically argued that the Gilray accident was not a covered "occurrence" because the claims arose from CTRC's *intentional*, non-accidental serving of alcohol. *See, e.g.*, *Dugan v. Olson*, 906 N.Y.S.2d 277, 278 (2d Dep't 2010) (holding that a cause of action under the New York Dram Shop Act requires a plaintiff to "prove that the defendant sold alcohol to a person who was visibly intoxicated and that the sale of that alcohol bore some reasonable or practical connection to the resulting damages").

Serrano, the Sheehans, and CTRC separately moved for summary judgment on the basis that coverage exists under the plain language of the Policies. PIIC also moved for summary judgment on the basis that no coverage exists under the

- 5 -

CGL part of the Primary Policy or under the Excess Policy because the underlying lawsuits alleged intentional acts on the part of CTRC.

On May 8, 2017, the district court granted all three summary judgment motions against PIIC and denied PIIC's motion. Relying on *Markevics v. Liberty Mutual Insurance Co.*, 717 N.Y.S.2d 305 (2d Dep't 2000), *aff'd on other grounds*, 97 N.Y.2d 646 (2001), the court held that (1) coverage exists under the CGL part of the Primary Policy because a violation of the Dram Shop statutes qualifies as an "occurrence" under New York law; (2) the plain language of the fundraising endorsement in the Primary Policy establishes coverage under the CGL part because the claims "indisputably involve claims of bodily injury arising out of the Dyngus Day" event, Sp. App. 7; and (3) coverage exists under the Excess Policy for the same reasons coverage existed under the CGL part of the Primary Policy.

Judgment was entered May 8, 2017. This appeal followed.

## DISCUSSION

We review *de novo* the district court's summary judgment ruling, "construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in [its] favor." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 108 (2d Cir. 2013). A movant is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Because interpretation of an

- 6 -

insurance agreement is a question of law, we review the district court's construction of the [Policies] *de novo*." *U.S. Fid. & Guar. Co. v. Fendi Adele S.R.L.*, 823 F.3d 146, 149 (2d Cir. 2016) (alteration in original). Here, the parties agree that the Policies are governed by New York law.

New York courts interpret insurance policies according to principles of contract law, giving policy language its "plain and ordinary meaning" and construing ambiguities in favor of the insured. *Selective Ins. Co. of Am. v. Cty. of Rensselaer*, 26 N.Y.3d 649, 655 (2016). "An insurer's duty to defend claims made against its policyholder is ordinarily ascertained by comparing the allegations of a complaint with the wording of the insurance contract." *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004).

On appeal, PIIC raises a number of arguments in support of its contention that the district court erred in determining that the "non-accidental action of serving alcohol" constitutes a covered occurrence. Appellant's Br. 10. We are not persuaded by any of them.

We agree with the district court that a violation of the Dram Shop statutes that results in a car accident qualifies as "an occurrence" under New York law. Certainly, CTRC did not intend or expect the accident that followed the fundraising event. That CTRC intended to sell alcohol to Gilray also does not render the subsequent injuries "intended" by CTRC for purposes of excluding coverage, even if those injuries

- 7 -

were arguably foreseeable to CTRC. *See Allegany Co-op Ins. Co. v. Kohorst*, 678 N.Y.S.2d 424, 425 (4th Dep't 1998) (holding that "[t]here is coverage if the damages alleged in the complaint arise out of a chain of unintended though foreseeable events that occurred after the intentional act" (internal quotation marks omitted)); *see also City of Johnstown, N.Y. v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1150 (2d Cir. 1989) ("[T]hough an intentional act may ultimately cause certain damages, those damages may, under New York law, be considered 'accidental' if the 'total situation could be found to constitute an accident.' . . . In general, what makes injuries or damages expected or intended rather than accidental are the knowledge and intent of the insured." (emphasis omitted)).

PIIC asserts that the district court incorrectly relied on dictum in *Markevics*, and that this was an issue of first impression that required the court to predict how the New York Court of Appeals would rule. We disagree. To the extent PIIC relies on the dissent in *Markevics* and cites cases applying the substantive law of other states, the reliance is misplaced. As discussed by the district court, the facts in *Markevics* are similar to those in this case. *See Markevics*, 717 N.Y.S.2d at 305-06. There, the plaintiff argued that an insurance company was obligated to defend and indemnify its insured in connection with a lawsuit involving the furnishing of alcohol to an individual who later caused an automobile accident that injured the plaintiff. *See id.* As in this case, the insurance company argued that the policy did not provide coverage

because the claims arose from the insured's "non-accidental action of serving alcohol to the driver of the car in which the plaintiff was injured." *Id.* at 308 (Santucci, *J.*, dissenting) (internal quotation marks omitted). The majority expressly rejected that argument, concluding that it was "beyond question that a claim was made against [the insured] for damages because of bodily injury caused by an occurrence." *Id.* at 306. It further concluded that the language of the contract -- which defined "'occurrence . . . so as to include 'an accident . . . which results . . . in . . . bodily injury'" -- was "unambiguous" and, absent an exclusion, "the policy provides coverage." *Id.* at 306-07.

A number of other New York courts, in a line of cases reaching back to then-Judge Cardozo's opinion in *Messersmith v. American Fidelity Co.*, 232 N.Y. 161 (1921), have also found that CGL policies cover injuries where an accident at issue is the unintended result of an intentional act. *See, e.g., Salimbene v. Merchants Mut. Ins. Co.*, 629 N.Y.S.2d 913, 915 (4th Dep't 1995) ("Accidental results can flow from intentional acts. The damage in question may be unintended even though the original act or acts leading to the damage were intentional."); *Allegany*, 678 N.Y.S.2d at 424-25 (holding that an insurance company was required to defend and indemnify its insured because injuries resulting from an intentionally set fire still constituted an "accident" where the insured did not intend the subsequent injuries).

PIIC also asserts that CTRC's sale of alcohol to Gilray, not the accident, is the operative event giving rise to the legal claims at issue because the Dram Shop

statutes impose strict liability for such a sale. We disagree. A Dram Shop claim not only requires an unlawful sale -- meaning that the person selling or otherwise providing an intoxicated person with alcohol knew he was already intoxicated -- but also requires an underlying injury. *See Sherman v. Robinson*, 80 N.Y.2d 483, 486 (1992). It makes little sense to characterize the claims at issue as arising solely from the sale of alcohol, separate and distinct from the accident causing the requisite injury. *See* N.Y. Gen. Oblig. Law § 11-101 ("Any person who shall be injured . . . by any intoxicated person, or by reason of the intoxication of any person, . . . shall have a right of action against any person who shall, by unlawful selling to or unlawfully assisting in procuring liquor for such intoxicated person, have caused or contributed to such intoxication . . . .").

PIIC additionally argues that the fundraising endorsement in the Primary Policy does not establish coverage independent of the terms and conditions of the CGL part, and because the endorsement does not modify the terms, conditions, and limitations of the CGL, there must still be an "occurrence" to trigger coverage. It further argues that the district court's conclusion that an "occurrence" was not required runs afoul of the fortuity doctrine which holds that a loss is not insurable if it is not fortuitous. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Stroh Cos.*, 265 F.3d 97, 106 (2d Cir. 2001) ("[I]nsurance is not available for losses that the policyholder knows of, planned, intended, or is aware are substantially certain to occur." (citation omitted)).

- 10 -

Even if we accept PIIC's argument as correct, for the reasons discussed earlier, we nevertheless conclude that the car accident here was a fortuitous event from the perspective of CTRC. Therefore, the fortuity doctrine does not preclude coverage under the endorsement.

Moreover, the plain language of the endorsement provides coverage to CTRC "for bodily injury" *arising out of* the Dyngus Day event, and we agree that the injuries suffered by Mr. Sheehan and Mr. Serrano "ar[ose]" out of the Dyngus Day fundraising event. App. 209; *see Regal Constr. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 15 N.Y.3d 34, 38 (2010) (explaining that when an insurance endorsement uses the phrase "arising out of," it means "originating from, incident to, or having connection with"). Even if Gilray directly caused the accident, the claims are connected to the Dyngus Day event by virtue of the relevant allegations in the complaints: Gilray was served alcohol at the Dyngus Day event and subsequently struck Mr. Sheehan and Mr. Serrano with his vehicle while intoxicated, severely injuring them. *See Burlington Ins. Co. v. NYC Transit Auth.*, 29 N.Y.3d 313, 324-25 (2017) (explaining that "arising out of" is not the functional equivalent of "proximately caused by"). We therefore agree with the district court that coverage under the CGL part also exists by virtue of the fundraising endorsement in the Primary Policy. *See Regal Constr.*, 15 N.Y.3d at 38 (to establish coverage under the phrase "arising out of," all that is required is "some causal relationship between the injury and the risk for which coverage is provided").

- 11 -

Lastly, PIIC argues that because CTRC purchased liquor liability coverage under the Primary Policy, that provision is more "specific" than the general CGL coverage as applied to the facts of this case, and thus controls. We are not persuaded. The CGL fundraising endorsement clearly confers insurance coverage for bodily injuries -- without limitation -- arising from the Dyngus Day event. The liquor liability part also does not expressly limit the amount of coverage provided to CTRC but instead provides an additional $1 million for claims arising from the sale of alcohol, for which CTRC paid a $1,000 premium. To the extent there is ambiguity as to whether the liquor liability part limits the coverage provided under the CGL part, we construe the terms in the light most favorable to CTRC. *See White v. Continental Cas. Co.*, 9 N.Y.3d 264, 267 (2007) ("[A]ny ambiguity must be construed in favor of the insured and against the insurer.").

For the same reasons that coverage exists under the CGL part of the Primary Policy on the basis that a car accident resulting from a purported violation of the Dram Shop statutes is a covered "occurrence," we also hold that coverage exists under the Excess Policy.

We have considered PIIC's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court and **REMAND** only with respect to the issue of attorneys' fees.[3]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[3] CTRC requested that we grant it the right to recover attorneys' fees. It moved for attorneys' fees below, and the district court denied the motion without prejudice to renewal within 14 days after this Court's ruling on the merits of the appeal. In light of our disposition of this appeal, we remand for the district court to address the issue of attorneys' fees in the first instance.